GIANT FOOD, INC., Appellant,

v.

NATION'S FOODSERVICE,
INC., Appellee.

Appeal No. 82–613.

United States Court of Appeals,
Federal Circuit.

June 30, 1983.

Alan S. Cooper, Washington, D.C., argued for appellant. With him on brief were William W. Beckett and Aaron L. Handleman, Washington, D.C., of counsel.

Dale Power, of San Pablo, Cal., argued for appellee. Melville Owen and Lora Thielbar, San Francisco, Cal., were on brief for appellee.

Before MILLER, Circuit Judge, SKELTON, Senior Circuit Judge, and SMITH, Circuit Judge.

SKELTON, Senior Circuit Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board (TTAB) of June 16, 1982, dismissing Opposition No. 60,397; 214 USPQ 614 (TTAB 1982). The appeal is taken pursuant to § 21 of the Trademark Act of 1946, 15 U.S.C. § 1071.

Appellee, Nation's Foodservice, Inc. (applicant), seeks to register the mark GIANT HAMBURGERS and Design, shown below, for "hamburger and hot dog sandwiches, milk shakes for consumption on or off premises" and restaurant services.

Registration was opposed by appellant, Giant Food, Inc., (opposer), on the ground

of likelihood of confusion between applicant's mark and opposer's marks in view of opposer's prior use and registration of the marks, GIANT FOOD, SUPER GIANT, GIANT FOOD and Design, and GIANT and Design for, *inter alia,* retail grocery and supermarket services and private label food products.[1] Opposer's two composite marks are shown below:

The TTAB found that purchasers have come to associate opposer's mark with goods and services offered by opposer; that the services offered by the two parties were not totally unrelated; that although opposer's trade area is presently confined to the Washington, D.C.-Maryland-Virginia area, its exclusive right to use that mark in commerce for the goods and services specified in its registrations extends to all parts of the United States; and that the issue to be determined in the case was whether there was a likelihood of confusion between GIANT HAMBURGERS and Design on the one hand and GIANT, SUPER GIANT, GIANT and Design, and GIANT FOOD and Design on the other hand, for the respective goods and services of the parties. The TTAB concluded on this issue that, in the market in which applicant's products are

sold, purchasers would construe the term GIANT HAMBURGERS as a size indicator, and thus would not confuse applicant's mark with opposer's mark. The TTAB also concluded that the overall differences in the presentation of the marks would prevent any likelihood of confusion. For the reasons given below, the decision of the TTAB must be reversed.

I

Opposer opened its first store in 1936 and has operated continuously since that time under the trade names and service marks GIANT and GIANT FOOD. Opposer has used these marks in various forms, including use in combination with the letter G, *viz.* G/GIANT and G/GIANT FOOD, under Registration Nos. 1,085,784 and 1,085,786, *supra.* These designs have served as marks for retail grocery supermarket and general merchandising store services, restaurant[2]

---

1. Opposer is the owner of the following registered marks:
   (1) Registration No. 1,078,672 of the mark GIANT FOOD.
   (2) Registration No. 1,085,784 of the mark G/GIANT.
   (3) Registration No. 1,085,786 of the mark G/GIANT FOOD.
   (4) Registration No. 1,085,787 of the mark SUPER GIANT.

   (5) Registration No. 1,129,400 of the mark G/GIANT PHARMACIES & Design.

2. Opposer operated two restaurants in the 1960's, but these were later closed. At present, it operates no restaurants, and a 1978 task force study recommended that no such operations be commenced.

and catering services, retail grocery supermarket, delicatessen, bakery, general merchandising, pharmacy and drug store services, and an extensive line of food and beverage products, including bread and bakery goods, meat, sandwiches, party platters, condiments, and soft drinks. The marks are also used in conjunction with the preparation and sale of a variety of ready-made food products, such as sandwiches and hot dogs in its delicatessen department, and "hot-to-go" chicken. In all, opposer uses these marks on over 400 categories of products. Its business is extensive in the area of Washington, D.C., Virginia and Maryland with approximately 120 food stores in operation there. It is well known by consumers in that region, having made sales in excess of one billion dollars in 1980. It and its products have received national publicity by being featured on the ABC television program "20/20". It has expended considerable amounts of money in advertising its marks and products through local media in the area where it does business. In short, purchasers in the area are familiar with opposer's service marks and have come to associate them with the goods and services provided by opposer.

Applicant's business was started as a sole proprietorship in 1952 under the name GIANT HAMBURGERS. It was incorporated later under its present name, Nation's Foodservice, Inc. However, its restaurants have always gone by the name GIANT HAMBURGERS. In 1959 applicant began to develop its own logo, and on November 21, 1962, it first used the mark shown above, consisting of a picture of a hamburger with the words GIANT HAMBURGERS appearing across the front of the hamburger, with a red and white striped banner for a background. The word GIANT is displayed more prominently than the word HAMBURGERS. Like opposer's marks, the word GIANT is written in capital letters. It is worth noting that the firm hired to design the mark was told by applicant that the word "GIANT" was the "key word" that had served to give identity to its restaurant.

Applicant filed to register this mark for hamburger and hot dog sandwiches, milk shakes for consumption on or off the premises, and for restaurant services. It operates restaurants through licensees under the subject mark. There are currently 15 such restaurants, all located in California, and these are engaged principally in "fast-food" operations. Applicant also operates a bakery which produces goods for sale in applicant's licensed restaurants. The opposed mark is used on store signs, menus, cups, bags, employee uniforms, courtesy cards, and newspaper advertisements. Even though presently located exclusively in California, there is evidence that applicant's restaurants have achieved some degree of notoriety in other parts of the country, due to their location in tourist areas in California.

At the hearing before the TTAB, there was certain evidence considered pertaining to third party usage, relied upon by applicant to demonstrate that the word GIANT was merely a size indicator. The exhibits and depositions of applicant's witnesses dealt with the use by other restaurants and markets of such advertisements as "BOB's GIANT BURGERS", "CONNIE'S GIANT ¼ lb. BURGERS", "GINO'S GIANT" hamburgers, and "GIANT OPEN AIR MARKETS." The majority of these third-party usages were located in California. The TTAB relied upon these examples and on a dictionary definition in reaching the conclusion that the word "GIANT" is ordinarily used in its descriptive sense as a size indicator.

Applicant seeks a geographically unrestricted registration under which it might expand throughout the United States. Under these facts, it is not proper, as the TTAB found, to limit our consideration to the likelihood of confusion in the areas presently occupied by the parties. Section 7(b) of the Trademark Act of 1946, 15 U.S.C. § 1057(b), creates a presumption that the registrant has the exclusive right to use its mark throughout the United States. Therefore, the geographical distance between the present locations of the respective businesses of the two parties has little

relevance in this case. *See, Amcor, Inc. v. Amcor Industries, Inc.,* 210 USPQ 70, 77 (TTAB 1981).

## II.

■ The issue we are faced with is whether the mark of applicant is so similar to the marks of opposer that, when applied to applicant's goods and services, it would create a likelihood of confusion in the minds of purchasers in the marketplace concerning source or origin. 15 U.S.C. § 1052(d). In considering the question of likelihood of confusion, the only relevant application of the law to the facts is in the context of the marketplace, because that is where confusion of prospective purchasers would or would not occur. *Burger Chef Systems, Inc. v. Sandwich Chef, Inc.,* 608 F.2d 875, 877 (Cust. & Pat.App.1979); *Application of E.I. Du Pont De Nemours & Co.,* 476 F.2d 1357, 1360 (Cust. & Pat.App.1973). All evidence of record bearing on the question of likelihood of confusion must be considered in order to determine the circumstances surrounding the use of the mark. *Burger Chef, supra* at 877; *Du Pont, supra* at 1360–62. *Du Pont* sets forth a list of 13 evidentiary factors that must be considered, when of record, in testing for likelihood of confusion. *Du Pont, supra* at 1361.

Applicant makes the initial argument that the issue of likelihood of confusion is a question of fact, and, therefore, the TTAB's finding on that issue may not be overturned unless clearly erroneous. Some circuit courts hold that the question of likelihood of confusion is one of fact and is subject to the "clearly erroneous" standard of Fed.R. Civ.P. 52(a). *Hindu Incense v. Meadows,* 692 F.2d 1048 (6th Cir.1982); *Purolator, Inc. v. Efra Distributors, Inc.,* 687 F.2d 554 (1st Cir.1982). However, other courts hold that it is a conclusion of law. *Alpha Industries v. Alpha Steel, Etc.,* 616 F.2d 440 (9th Cir. 1980); *J.B. Williams Co., Inc. v. Le Conte Cosmetics, Inc.,* 523 F.2d 187 (9th Cir.1975), *cert. denied,* 424 U.S. 913, 96 S.Ct. 1110, 47 L.Ed.2d 317 (1976). Our predecessor court, the Court of Customs and Patent Appeals, recognized in *Du Pont* that the question of

likelihood of confusion "has been termed a question of fact" by other courts, but did not specifically adopt that view. *Du Pont, supra* at 1361. It went on to say that "if labeled a mixed question or one of law, it is necessarily drawn from the probative facts in evidence." *Id.* Subsequently, in the case of *Interstate Brands v. Celestial Seasonings,* 576 F.2d 926 (Cust. & Pat.App.1978), Chief Judge Markey (who also wrote the opinion in *Du Pont*) stated for the majority that the question of likelihood of confusion "is a legal conclusion" and cannot be "admitted" as a fact. *Id.* at 929.

■ However the ultimate issue of likelihood of confusion is characterized, it is clear that our predecessor court did not apply the "clearly erroneous" standard of review to the issue. In *Du Pont,* Chief Judge Markey wrote that "... it is the duty of the examiner, the board, *and this court* (emphasis added) ..." to determine the ultimate issue of likelihood of confusion. A review of cases in which the CCPA reversed the decision of the TTAB on this issue will demonstrate that our predecessor court did not consider itself bound by a narrow standard of review of the question. *See, e.g., Application of Superior Outdoor Display, Inc.,* 478 F.2d 1388 (Cust. & Pat.App.1973); *Du Pont, supra; Krim-Ko Corporation v. Coca Cola Bottling Co. of N.Y.,* 390 F.2d 728, 55 C.C.P.A. 903 (CCPA 1968). We have held that the decisions of the Court of Customs and Patent Appeals are binding upon us. *South Corporation v. United States,* 690 F.2d 1368 (Fed.Cir.1982). Therefore, we hold that the issue of likelihood of confusion is the ultimate conclusion of law to be decided by the court, and that the clearly erroneous rule is not applicable.

■ Having disposed of applicant's first contention, we now turn to a consideration of the evidentiary factors listed in *Du Pont.* One of those factors is the fame of the prior mark, as measured by volume of sales, advertising, and length of use. Opposer has used its mark continuously for over 45 years. Its sales in the Washington, D.C.-Virginia-Maryland area in 1980 were in excess of one billion dollars, as noted above.

It has enjoyed considerable exposure through the media, having been featured on national television as well as locally. Its mark is displayed prominently on a large variety of grocery products. The evidence as a whole strongly indicates that opposer's mark is well known in its area of operation and that consumers associate the words GIANT and GIANT FOOD with opposer's business activities. The TTAB has made findings to this effect in two prior cases. See Giant Food, Inc. v. Rosso and Mastracco, Inc., —— USPQ —— (TTAB 1982); Giant Food, Inc. v. Malone & Hyde, Inc., 178 USPQ 246, 249 (TTAB 1973), rev'd on other grounds, 522 F.2d 1386 (Cust. & Pat.App. 1975). We hold that opposer's marks have acquired considerable fame, which weighs in its favor in determining likelihood of confusion.

Another factor to consider under Du Pont is the similarity or dissimilarity and nature of the goods and services on which the marks are used. The TTAB found that the services performed by the two parties were not totally unrelated, and it noted that other cases had held that supermarket services or food items were related to cafeteria or restaurant services. See, e.g., In re H.J. Seiler Co., 289 F.2d 674, 48 C.C.P.A. 1001 (CCPA 1961); In re Pick-N-Pay Supermarkets, Inc., 185 USPQ 172 (TTAB 1974). The record shows that there are certain items sold by both parties under their respective marks. For example, both sell hot dogs and bakery goods in their establishments. Opposer sells sandwiches and prepared foods in its delicatessen section, while applicant sells hamburgers. Opposer sells meats and condiments that can be used in hamburgers and hot dogs, while applicant uses similar items in preparing its hamburger and hot dog sandwiches. While we recognize that the average consumer makes a distinction between fast-food restaurants and supermarkets, we are satisfied that, if the marks themselves are confusingly similar, customers of the fast-food restaurant would be likely to believe that opposer owned, sponsored, or supplied that business. In re H.J. Seiler, supra.

This brings us to a consideration of another important factor in this case, i.e., the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression. We note at the outset that in viewing the marks as a whole, there is one portion that is clearly dominant in each. That dominant portion is the word GIANT. In both opposer's and applicant's marks, that word is written in capital letters across the middle of the design. In each mark, it is larger than any other word that appears on the mark. One observing applicant's mark from a distance would see the word GIANT long before he saw the word HAMBURGERS, and possibly before he could recognize that there was a hamburger design. From a distance, both marks reveal a word written across a circular or oval-shaped object. In both marks the "G" and the "T" of GIANT are located partially outside of the oval or circular portion of the designs.

In its application to the Patent and Trademark Office, applicant disclaimed "any exclusive right to the words GIANT HAMBURGERS apart from the mark as a whole without relinquishing any of its common law rights." However, it is well settled that the disclaimed material still forms a part of the mark and cannot be ignored in determining likelihood of confusion. Industria Espanola de Perlas Imitacion, S.A. v. National Silver Co., 459 F.2d 1049, 59 C.C.P.A. 1058 (CCPA 1972); Schwarzkopf v. John H. Breck, Inc., 340 F.2d 978, 52 C.C.P.A. 957 (CCPA 1965). Such disclaimers are not helpful in preventing likelihood of confusion in the mind of the consumer, because he is unaware of their existence. Therefore, the disclaimed portions of the mark must be considered in determining the likelihood of confusion.

Although it is not proper to dissect a mark, our predecessor court recognized that one feature of a mark may be more significant than other features, and that it is proper to give greater force and effect to that dominant feature. Burger Chef, supra

at 878; *Martin v. Crown Zellerbach Corp.,* 422 F.2d 918, 920, 57 C.C.P.A. 968, *cert. denied,* 400 U.S. 911, 91 S.Ct. 140, 27 L.Ed.2d 151 (1970). The TTAB found in this case, however, that "GIANT" would only be perceived as a size indicator as used in applicant's mark. We do not agree. Moreover, there is nothing in applicant's mark that would indicate to a consumer that the word "GIANT" is meant to identify source or origin in applicant instead of opposer. This is especially true of a consumer in opposer's area, who has come to associate the word "GIANT" with opposer's products.

The third party usages relied upon by the TTAB and applicant present totally different situations. In each of those usages there are normally words indicating both origin and size, such as BOB'S GIANT BURGERS, or CONNIE'S GIANT ¼ lb. BURGERS. The TTAB erred in relying on these third-party usages in reaching the conclusion that purchasers of applicant's products would construe "GIANT" as only a size indicator. There is a great difference between such usages and applicant's mark. The third-party uses clearly indicate the origin of the hamburgers, such as "Bob's" or "Connie's". Under these circumstances, no purchaser could reasonably conclude that opposer was the origin or source of such items. On the other hand, there is nothing in applicant's mark that indicates the source or origin of its hamburgers. A purchaser could only speculate on who sponsored or produced such products, and his speculation would necessarily be based on the word "GIANT" in applicant's mark. It is reasonable to assume that under such circumstances, a person familiar with opposer's products would likely conclude that the word "GIANT" in applicant's mark refers to opposer as the sponsor, source and origin of applicant's products.

Another factor weighing heavily in our decision is that the dominant portion of both parties' marks sounds the same when spoken. Although the record does not indicate that applicant's business is commonly referred to as "Giant", it does indicate that people have called it by that name, omitting the word "Hamburgers". Thus, in a conversation between two consumers in opposer's area about a place of business called "Giant", there likely would be confusion about which "Giant" they were talking about. In this situation, any differences in the design of the marks would not serve to avoid confusion. *See Krim-Ko, supra.*

To be sure, there are differences in the marks. But in giving greater force and effect to the dominant portion of the marks, we conclude that the similarities in appearance, sound and overall commercial impression outweigh the dissimilarities. *Burger Chef, supra* at 878. And, if there is any doubt as to the likelihood of confusion, that doubt must be resolved against the newcomer. *Bulova Watch Co., Inc. v. Waltham Watch Co.,* 408 F.2d 1062, 56 C.C.P.A. 1048 (CCPA 1969).

At least one of the *Du Pont* factors could be said to be in applicant's favor in this case. Although both parties have used their respective marks over a number of years, there is no evidence of actual confusion. However, this would appear to be due, not to dissimilarities of the marks, but mainly to the geographic separation of the two parties' operations. Moreover, it is unnecessary to show actual confusion in establishing likelihood of confusion. *In re Marriott Corp.,* 517 F.2d 1364, 1368 (Cust. & Pat.App.1975). *See also, Vandenburgh,* Trademark Law and Procedure 216 (2d ed. 1968), and cases cited in note 6. As stated in *Du Pont,* different factors may play dominant roles from case to case.

After considering all the *Du Pont* factors for which evidence exists in the record, we hold that applicant's proposed trademark so resembles opposer's registered marks that it is likely to cause confusion, and accordingly it should be refused registration under 15 U.S.C. § 1052(d). The decision of the TTAB is reversed.

REVERSED.