**THIS DISPOSITION
IS NOT CITABLE AS
PRECEDENT OF
THE TTAB**

**Mailed: January 29, 2004**
Paper No. 36
CEW

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

GE Osmonics, Inc.[1]
v.
Osmosis Technology, Inc.
_____

Opposition No. 91117751
to Application No. 75721083
filed on June 3, 1999
_____

Steve Lucke and Paul J. Robbennolt of Dorsey & Whitney for
GE Osmonics, Inc.

Don B. Finkelstein, Esq. for Osmosis Technology, Inc..
_____

Before Cissel, Hairston and Walters, Administrative
Trademark Judges.

Opinion by Walters, Administrative Trademark Judge:

Osmonics, Inc. (opposer) filed its opposition to the

application of Osmosis Technology, Inc. (applicant) to

register the mark OSMOTECH for "reverse osmosis separation

---

[1] Though the opposition was filed by Osmonics, Inc., the records of the
USPTO show that Osmonics, Inc. became Oasis Acquisition, Inc., through a
merger, and subsequently changed its name to GE Osmonics, Inc. Thus we
have changed the heading in this case to reflect the current opposer of
record.

or ultra filtration systems for water purification for residential and commercial and industrial use[,] consisting of filter membranes, housings for filter membranes and connection fittings for housings" in International Class 11.[2] The application contains a claim of ownership of Registration No. 2,220,601 for the mark OSMOTIK for ….[3]

As grounds for opposition, opposer asserts that applicant's mark, when applied to applicant's goods, so resembles opposer's previously used and registered marks OSMO and the mark shown below:



for "reverse osmosis solvent separation units"[4] as to be likely to cause confusion under Section 2(d) of the

---

[2] Application Serial No. 75721083, filed June 3, 1999, based upon an allegation of a bona fide intention to use the mark in commerce in connection with the identified goods.

[3] Applicant's statement contains an error. A review of the records of the USPTO shows that applicant owns Registration No. 2,110,601 for the mark OSMOTIK for "reverse osmosis separation or ultra filtration systems for water purification for residential and commercial and industrial use consisting of filter membranes, housings for filter membranes and connection fittings for housings," and the registration issued on November 4, 1997. If applicant prevails herein, the error in the claimed registration number must be corrected before the application proceeds to issuance of a registration.

[4] Opposer asserts ownership of two registrations; however, one of the asserted registrations, Registration No. 932,228 for OSMO and design, shown infra, has expired. Thus, the opposer's claim of likelihood of confusion is moot with respect to this registration. The remaining asserted registration is Registration No. 978,588, issued February 12, 1974, in International Class 11. [Sections 8 and 15 affidavits accepted and acknowledged, respectively, and renewed for a period of ten years from February 12, 1994.] We decide this case based on Registration No. 978,588, to the extent that title and status is established, and

Trademark Act. Additionally, opposer asserts that, pursuant to an exchange of correspondence between opposer and applicant's predecessor, applicant's predecessor deleted "Osmotech" from its corporate name and agreed not to use "Osmotech" in connection with reverse osmosis separation equipment.

Applicant, in its answer, denied the salient allegations of the claim and asserted as affirmative defenses that opposer's claim is barred by estoppel, laches and acquiescence; that opposer, in its own application to register OSMO, argued that its mark was sufficiently different from applicant's previously registered mark OSMOTIK to warrant registration; that the same arguments apply to the differences between OSMO and OSMOTECH and, thus, opposer cannot now argue otherwise; that "OSMOTIK and OSMOTECH are substantially similar in appearance and the goods listed in the registration of OSMOTIK are the same as the goods listed in applicant's application for the mark OSMOTECH [and thus] opposer is barred by the Morehouse doctrine (*Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F.2d 881, 160 USPQ 715 (CCPA 1969)." (Answer, pg. 5.)

---

evidence of alleged use of the marks OSMO and OSMO and design, shown infra.

*Procedural Matters*

We begin by addressing several questions regarding the nature of the issues and record in this case.

First, on November 9, 2001, opposer filed a motion to make of record in this proceeding selected portions of the trial testimony of Mike O. Joulakian, applicant's president, from Cancellation No. 24,275. On July 30, 2002, the Board granted opposer's motion ONLY to the extent that opposer was permitted to submit, in its entirety, Mr. Joulakian's July 13, 2001 trial testimony from Cancellation No. 24,275. Opposer was given thirty days to submit a complete copy of that testimonial deposition. Opposer did not submit the entire deposition in accordance with the Board's order and, thus, the portions submitted with its motion have not been considered.

Second, on January 6, 2003, applicant filed a motion to strike the notice of opposition. On March 17, 2003, the Board denied applicant's motion, stating that applicant had provided no legal or factual basis for its "Trading with the Enemy Act arguments"[5]; that such arguments were in the nature of a compulsory counterclaim which was not pleaded; and that applicant had fifteen days to submit a compulsory counterclaim on a legally cognizable ground or thirty days

---

[5] Applicant alleged, inter alia, that opposer sold certain products to Iran in violation of the Trading with the Enemies Act; and that opposer was soon to be sanctioned by the federal government in this regard.

4

to submit its brief in the case. Applicant submitted its brief within the required thirty-day period and therein argued that it had insufficient information to submit a counterclaim; asked that the Board, through the Secretary of Commerce, obtain the information its seeks; and reiterated its "Trading with the Enemy Act arguments." The Board, through the Secretary of Commerce or otherwise, will not undertake to assist a party in obtaining evidence in a proceeding. As previously stated by the Board, applicant's "Trading with the Enemy Act arguments" are in the nature of an attack on the validity of opposer's registration and, thus, are necessarily raised only in a counterclaim to cancel that registration. Because no counterclaim was filed, and the issues were not tried, these arguments have been given no consideration.

Third, applicant objects to opposer's argument, stated for the first time in its brief, that applicant does not have a bona fide intention to use its mark in commerce. We agree with applicant that this issue was neither pleaded nor tried and, thus, we have not considered this argument by opposer. To the extent that opposer's argument pertains to applicant's predecessor's purported agreement not to use the mark OSMOTECH, we find this issue has been pleaded and discussed in the context of opposer's claim of likelihood of confusion.

Fourth, applicant contends that the notice of opposition limits opposer's likelihood of confusion claim to opposer's one subsisting registration and that opposer has not also pleaded use of its marks. This allegation is not born out by the language of the notice of opposition, which includes an allegation of common law use of each of the marks on the relevant goods for more than thirty years. Thus, opposer's evidence of common law use of its marks has been considered herein.

Fifth, applicant objects to consideration of the photocopies of opposer's Registration No. 978,588, submitted by notice of reliance, because such documents do not establish the status or ownership of the registration. A review of the documents shows that they are, in fact, photocopies of the originally-issued Registration No. 978,588 and the renewal certificate. As such, these are not status and title copies required by Trademark Rule 2.122(d), 37 C.F.R. 2.122(d). Thus, these documents are insufficient to establish opposer's ownership, or the status, of the pleaded registration. However, we have considered opposer's testimony to determine whether ownership and status of the claimed Registration No. 978,588 has been established.

Finally, applicant objects to specified testimonial exhibits, comprising opposer's alleged annual reports, on the ground that neither Mr. Spatz nor Mr. Paulson are

6

qualified to establish a proper foundation for these reports, and that the reports constitute hearsay. We disagree and find that both Mr. Spatz, opposer's chairman and CEO, and Mr. Paulson, opposer's director of corporate technical services, adequately testified to their personal knowledge of these regularly-kept business records. Thus, we have considered these exhibits. However, the contents of the reports are hearsay as to the truth of the facts contained therein, and so have not been considered for that purpose. To the extent that the reports evidence use of the mark on items ancillary to the claimed products, i.e., the annual reports, as well as on products pictured therein, they have been considered.

*The Record*

The record consists of the pleadings; the file of the involved application; the testimony depositions by opposer of Donald D. Spatz, opposer's founder, chairman and CEO, and David J. Paulson, opposer's director corporate technical services, both with accompanying exhibits; the rebuttal testimony deposition by opposer of Jason Booth, opposer's counsel's litigation graphics specialist, with accompanying exhibits; and the testimony deposition by applicant of Mike. O. Joulakian, applicant's president, with accompanying exhibits. Both parties filed briefs on the case, but a hearing was not requested.

7

*Factual Findings*

Mr. Paulson stated that opposer's business is, and has always been, in the general field of fluid separation using cross-flow membrane technology. This includes, in order of particle size filtered from smallest to largest, reverse osmosis, nanofiltration, ultrafiltration and microfiltration. Opposer manufactures, markets and applies membranes in each of these categories. Opposer began in 1970 utilizing its reverse osmosis methodology, which has concentrated on spiral membrane technology, and its first applications were medical, e.g., producing purified water for artificial kidneys. Opposer added ultrafiltration products in the early 1970's, nanofiltration products in the late 1970's to early 1980's, and microfiltration products in the early 1980's.

Describing reverse osmosis as opposer's core technology, Mr. Paulson explained the technology as follows:

> Natural osmosis occurs from an imbalance in energy of fluids on opposite sides of a semipermeable membrane. The energy is higher in the more pure water, and nature tends to move the water from the more pure state trying to dilute the water in the less pure state until they reach the same energy level.
>                          …
> Reverse osmosis is to take the process of osmosis and reverse it by applying hydraulic pressure to the water that is less pure, the side, the fluid that has … less energy and more solids in it. Force that water against the surface of the membrane, of a semipermeable membrane. Such a membrane has to have very small pores, as they're called, and allow only water to go through or very

8

little of the contaminated material.  So you're reversing the natural osmosis procedure. … The aim is to allow pure water to go through [the pores] while retaining and not allowing the transfer of other solutes and suspended material to go through.
…
Reverse osmosis allows the purification of water by excluding dissolved material, solutes, including down to the ionic range, which is a very small solute.  Salt ions don't pass though [reverse osmosis] membranes well.

[David J. Paulson trial deposition, November 3, 2001, pgs. 18-19, 23, "Paulson dep."]

Mr. Paulson divided fluid separation product applications into three broad categories: waste treatment, process separation and water purification; and noted that opposer is involved in all three applications.  Referring to opposer's 1988 annual report (Opposer's Exhibit 23, p. 7), Mr. Paulson stated that opposer has identified sixteen distinct markets for its products across all three applications, e.g., the pulp and paper market, the beverage manufacturing market, the dairy processing market, the medical market and the potable water market.  These markets include commercial and industrial categories and, more recently, the residential market.

Mr. Spatz recounted opposer's history, the nature of its business, and its products, markets and customers. Opposer was founded in August 1969 with the goal of applying reverse osmosis technology, invented in 1959 at UCLA, to the marketplace.  Opposer sold its first reverse osmosis systems

9

in 1970 under the trademark OSMONICS.  Starting in mid to late 1970, opposer used, and has continued to use, the trademark OSMO to identify its reverse osmosis machines, whereas it used, and uses, the mark OSMONICS more broadly to identify its whole reverse osmosis system as well as its fluid filtration and purification systems.  Both OSMO marks, along with the OSMONICS mark, have been used on various units and components, which are also sold separately from systems, from approximately 1970 to the present.  OSMONICS is used on opposer's larger machines, whereas the two OSMO marks are used on opposer's medium-sized to small machines. The marks are affixed to equipment with decals or labels.

Some of the components to which opposer affixes, or at least initially affixed, its OSMO marks include cartridge filters, polymeric membranes and sepralators, plastic and stainless steel housings, small pure water reverse osmosis/ultrafiltration deionization equipment, and membrane test equipment.

Opposer initially promoted its products with press releases, which resulted in articles in several trade magazines, and product brochures.  Its advertising expenditures expanded from 1% of sales, mostly magazine exposure and brochures, to approximately 3-4% of sales in the 1980's.  Mr. Spatz noted that opposer's sales totaled approximately $300,000 in 1970; that sales grew to $36

10

million by 1989; and that sales were $200 million in 2000. Of total sales, products with the two OSMO marks on them represented approximately 70% of sales through 1983, 60% of sales after 1983, and 40% of sales in 2000.

Opposer used manufacturer's representatives to market its products until approximately 1986/1987, when it had developed its own in-house distributor organization. Opposer sells its components and systems to systems manufacturers, original equipment manufacturers, and commercial and industrial end-users.[6]

Applicant has been in business since February 1985. The products it markets and sells under its OSMOTIK mark are "reverse osmosis membrane elements, nanofiltration membrane elements, ultrafiltration membrane elements, housings for all of the above, including residential membrane elements and commercial membrane elements with appropriate pressure vessels.  And reverse osmosis systems for commercial usage." [Joulakian deposition, May 15, 2002, pg.7.]  Applicant's application to register OSMOTECH for the identified goods herein is based on an allegation of a bona fide intention to use the mark in commerce.  The record contains no indication that such use has commenced.

In the mid-1980's opposer learned of applicant and, in a letter dated August 24, 1984, opposer's counsel notified

11

applicant that opposer owned the registered mark OSMO "as applied to Reverse Osmosis Solvent Separation Units" (Opposer's Exhibit 116); that the adoption and use of OSMOTECH by applicant was likely to cause confusion; and advised applicant to stop using the name and mark OSMOTECH. An exchange of correspondence ensued between opposer's and applicant's attorneys.  Opposer's attorney's letter of May 29, 1985, (Opposer's Exhibit 120) includes the following statements:

> Your letter of March 21, 1985 stated that your client had "decided to cease the use of the name 'Osmotech' in all identification of its products and in its advertisements."  It then goes on to state that "Osmotech International, Inc. will immediately seek a new trademark so as to continue business" and that "furthermore, Osmotech International, Inc. shall continue to manufacture products utilizing the reverse osmosis process."
>
> …
>
> … Specifically, it is our understanding that your client is in the process of seeking another corporate name which is satisfactory to the Secretary of State of California and that you will also be adopting a new trademark for your products and terminating use of the trademark "OSMOTECH."

Applicant has submitted no evidence indicating that the conclusion in this letter is in any way incorrect or that these proposed events did not occur.

### *Analysis*

Mr. Spatz testified to the status of the registration for the mark OSMO and to opposer's ownership of the

---

[6] It is not clear from the record to what extent the OSMO marks may be used on products for the residential market.

registration. Thus, we consider Registration No. 978,588 for the mark OSMO to be of record. Accordingly, there is no issue with respect to opposer's priority. *King Candy Co., Inc. v. Eunice King's Kitchen, Inc*., 496 F.2d 1400, 182 USPQ 108 (CCPA 1974). We add, however, that priority is also clearly established by the evidence showing opposer's use since 1970 of the registered mark OSMO and the OSMO and design mark shown infra for, at least, the various fluid filtration products identified in the OSMO registration.

Our determination of likelihood of confusion under Section 2(d) must be based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue. *In re E.I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). See also, *In re Majestic Distilling Company, Inc.*, 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003). In considering the evidence of record on these factors, we keep in mind that "[t]he fundamental inquiry mandated by Section 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks." *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976). *See also In re Azteca Restaurant Enterprises, Inc.,* 50 USPQ2d 1209 (TTAB 1999) and the cases cited therein.

Opposer contends that it has established its priority; and that a likelihood of confusion exists between its mark OSMO and applicant's mark OSMOTECH for the respectively recited goods because the marks are similar; that applicant's mark incorporates opposer's mark in its entirety and adds to it the descriptive suffix "tech"; that the goods are nearly identical; that the trade channels are the same; that opposer's mark is famous; and that applicant's predecessor's earlier agreement not to use OSMOTECH is an acknowledgement that OSMOTECH is confusingly similar to OSMO.

Regarding the respective goods of the parties, applicant contends that opposer has not established that the goods are in any way related or similar, or that the customers or trade channels are the same or similar. Regarding the marks, applicant contends that both parties' marks are plays on the descriptive word "osmosis"; that the addition of "tech" to applicant's mark is descriptive and distinguishes it from opposer's mark; and that the marks have entirely different commercial impressions. Additionally, applicant contends that any prior agreement with opposer regarding use of OSMOTECH was limited to applicant's use of OSMOTECH as part of its corporate name, and there is no evidence suggesting applicant's predecessor ever agreed that OSMOTECH and OSMO are confusingly similar.

Applicant contends that there is no evidence that opposer's mark is famous and, thus, opposer's argument in this regard should be disregarded.[7]

With respect to the goods and services of the parties, we observe that there is a substantial overlap in the goods and services identified in the application and in the pleaded registration. Applicant's identified goods are "reverse osmosis separation or ultrafiltration systems for water purification for residential and commercial and industrial use consisting of filter membranes, housings for filter membranes and connection fittings for housings." Opposer has registered the mark OSMO for "reverse osmosis solvent separation units." The record in this case shows, further, that opposer has used the marks OSMO and OSMO and the design shown infra with reverse osmosis systems and ultrafiltration systems, as well as components for these systems, including cross-flow filter membranes and housings; that opposer's systems and products are sold for use in, inter alia, water purification; and that opposer's manufactures systems and products for commercial, residential and industrial use. Thus, we conclude that the goods of the parties are either identical or closely related. Further, in view of the identity and close

---

[7] Applicant argues that opposer has failed to protect its mark, referring to a third-party application. Not only is this application not of record herein, but there is no evidence regarding third-party marks and, thus, the relative strength or weakness of the marks herein.

similarities among the parties' goods, it is likely that such goods travel in the same channels of trade to the same classes of purchasers.

Turning to the marks, we note that while we must base our determination on a comparison of the marks in their entireties, we are guided equally by the well established principle that, in articulating reasons for reaching a conclusion on the issue of confusion, "there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties." *In re National Data Corp.,* 732 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985). We note, initially, that opposer did not plead or prove that its marks are famous and, thus, we have not considered this factor.

While the record does not indicate that OSMO has any meaning, when considered in connection with reverse osmosis and other filtration products and systems, it is likely, as applicant acknowledges (Brief, pg. 15), to suggest the word "osmosis." However, even suggestive marks are entitled to protection.

With respect to the OSMO mark with a design element, if both words and a design comprise the mark, then the words are normally accorded greater weight because the words are

16

likely to make an impression upon purchasers that would be remembered by them and would be used by them to request the goods and/or services. *In re Appetito Provisions Co*., 3 USPQ2d 1553, 1554 (TTAB 1987); and *Kabushiki Kaisha Hattori Tokeiten v. Scuotto*, 228 USPQ 461, 462 (TTAB 1985). See also: *Giant Food, Inc. v. Nation's Food Service, Inc*., 710 F.2d 1565, 218 USPQ 390 (Fed. Cir. 1983). We find that OSMO is the dominant portion of opposer's design mark because the design is approximately the same size as the letters and it is a simple pair of triangles set off to the left of the word OSMO.

Turning to applicant's mark, we take judicial notice of the definition, in the *American Heritage Dictionary of the English Language*, 4th ed. 2000, of "tech" as "N. 1. *Informal*. A technician. 2. Technology. 3. Technical work. Adj. Technical." In the context of the goods involved in this case, "tech" is likely to be perceived as suggestive of the technology involved in reverse osmosis; and the mark OSMOTECH, is likely to be perceived as a compound term combining the two suggestive terms "osmo" and "tech." However, contrary to applicant's contention, we do not find that the suffix TECH sufficiently distinguishes applicant's mark from opposer's OSMO marks.

We find applicant's mark OSMOTECH to be sufficiently similar to both of opposer's OSMO marks that, if used on the

17

identical and closely related goods involved in this case, confusion as to source is likely. Because applicant's mark begins with OSMO, which is identical to opposer's word mark, prospective purchasers are likely to see the similarities in the marks and, in view of the identity and related nature of the goods, believe that both parties' products come from the same or related sources.

We are not convinced otherwise by applicant's arguments to the contrary. In particular, we find applicant's characterization of opposer's letters regarding applicant's use of the mark OSMOTECH in 1985 to be incorrect and disingenuous. The letter of May 29, 1985 clearly states opposer's understanding of the parties' agreement, which is that applicant will not use OSMOTECH either as a mark or a trade name. Applicant has submitted no evidence questioning the accuracy of the statements in the letter as reflecting the understanding between applicant and opposer, or specifically stating why this agreement should not be viewed as implying applicant's concession that confusion is likely.

*Decision*: The opposition is sustained.