THIS OPINION
IS A PRECEDENT OF THE
T.T.A.B.

Mailed: 6/18/07

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

Schering-Plough HealthCare Products, Inc.
v.
Ing-Jing Huang

_____

Opposition No. 91117558
to application Serial No. 75566942
filed on October 8, 1998

_____

David J. Kera and Amy Sullivan Cahill of Oblon, Spivak, McClelland, Maier & Neustadt for Schering-Plough Healthcare Products, Inc.

Travis J. Tom and William W. Lai of Chang & Coté for Ing-Jing Huang.

_____

Before Quinn, Drost and Taylor, Administrative Trademark Judges.

Opinion by Quinn, Administrative Trademark Judge:

Ing-Jing Huang filed an application to register the mark DR. AIR (in typed form) for "footwear and insoles for footwear" in International Class 25.[1]

Schering-Plough HealthCare Products, Inc. opposed registration under Section 2(d) of the Trademark Act, 15 U.S.C. §1052(d). Opposer alleged that applicant's mark,

---

[1] Application Serial No. 75566942, filed October 8, 1998, alleging a bona fide intention to use the mark in commerce.

when applied to applicant's goods, so resembles opposer's previously used and registered marks DR. SCHOLL'S and AIR-PILLO for footwear and a variety of related products, including insoles for footwear, as to be likely to cause confusion.

Applicant, in his answer, denied the salient allegations of opposer's likelihood of confusion claim.

The record consists of the pleadings; the file of the involved application; trial testimony, with related exhibits, taken by opposer; and status and title copies of opposer's pleaded registrations introduced by way of opposer's notice of reliance. Applicant did not take testimony or introduce any other evidence. Both opposer and applicant filed briefs.

Opposer is engaged in the manufacture and sale of footwear and a wide variety of footwear-related products, including insoles for footwear. The marks DR. SCHOLL'S and AIR-PILLO have been in use since 1923 and 1947, respectively. Packaging for the insoles shows prominent usage of the marks DR. SCHOLL'S and AIR-PILLO together. Opposer's goods are sold in supermarkets, mass merchandisers and drug stores. These retailers include Wal-Mart, Target, CVS and Costco. The goods have been advertised on television and radio, and in print ads in publications such as People, Glamour, Good Housekeeping and Sports

Illustrated. A protective order prevents us from disclosing the specifics of opposer's sales volume and advertising expenditures. Suffice it to say, the numbers are significant.

Inasmuch as applicant did not take testimony or introduce any evidence during his trial period, nothing is known about applicant or his business.[2]

Opposer has established its standing to oppose registration of the involved application. In particular, opposer has properly made its pleaded registrations of record, and opposer further has shown that it is not a mere intermeddler. See Cunningham v. Laser Golf Corp., 222 F.3d 943, 55 USPQ2d 1842 (Fed. Cir. 2000); and Lipton Industries, Inc. v. Ralston Purina Co., 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).

Further, in view of opposer's ownership of valid and subsisting registrations, there is no issue regarding opposer's priority. King Candy, Inc. v. Eunice King's Kitchen, Inc., 496 F.2d 1400, 182 USPQ 108 (CCPA 1974). Thus, the only issue to decide herein is likelihood of confusion.

---

[2] Applicant's brief includes several factual allegations that are not established by the evidentiary record. Factual statements made in a party's brief on the case can be given no consideration unless they are supported by evidence properly introduced at trial. TBMP §704.06(b) (2d ed. rev. 2004).

As alluded to above, opposer introduced fifteen registrations of its marks covering a variety of products, including footwear and insoles therefor. The registered marks include DR. SCHOLL'S (typed form) for "insoles"[3] and AIR-PILLO (typed form) for "shoe insoles."[4] Opposer also owns various DR. SCHOLL'S registered marks that are stylized or include a design feature (such as the one shown below)[5] for footwear and insoles, as well as many other products, including hosiery, foot spray, powder and ointment, and moleskin and arch supports.



Our determination under Section 2(d) is based on an analysis of all of the facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue. In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). Opposer must establish that there is a likelihood of confusion by a preponderance of the evidence. The relevant du Pont factors in the proceeding now before us are discussed below.

---

[3] Registration No. 1255028, issued October 25, 1983; renewed.
[4] Registration No. 1415103, issued October 28, 1986; renewed.
[5] See, e.g., Registration No. 1257297, issued November 15, 1983; renewed.

The goods involved in this case are identical, and applicant does not contend otherwise. Both parties list footwear and insoles for footwear in their respective identifications of goods. Neither opposer's nor applicant's identification of goods is restricted as to trade channels or classes of purchasers. Accordingly, we must presume that the parties' goods are marketed in all of the normal trade channels for such goods, and that the goods are bought by the usual classes of purchasers. Given the identity in the goods, it is presumed that they move in the same trade channels to the same classes of purchasers. In view of the nature of the goods, these purchasers would include ordinary consumers, who would be expected to exercise nothing more than ordinary care in their purchasing decisions. Further, the goods are relatively inexpensive, and are capable of being purchased on impulse.

The du Pont factors of the similarity of the goods and trade channels, as well as the conditions under which and buyers to whom sales are made, weigh in favor of a finding of likelihood of confusion.

In considering the marks, we initially note that when marks are used in connection with identical goods and/or services, "the degree of similarity [between the marks] necessary to support a conclusion of likely confusion declines." Century 21 Real Estate Corp. v. Century Life of

America, 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992).

With respect to the involved marks, we examine the similarities and dissimilarities of the marks in their appearance, sound, meaning, and commercial impression. Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005). The test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in their entireties that confusion as to the source of the goods offered under the respective marks is likely to result. The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. Sealed Air Corp. v. Scott Paper Co., 190 USPQ 106 (TTAB 1975).

Inasmuch as opposer introduced evidence bearing on the fame of its marks, we now turn to consider this du Pont factor. Fame of the prior mark plays a dominant role in likelihood of confusion cases featuring a famous mark. Bose Corp. v. QSC Audio Products Inc., 293 F.3d 1367, 63 USPQ2d 1303 (Fed. Cir. 2002); Recot Inc. v. M.C. Becton, 214 F.3d 1322, 54 USPQ2d 1894 (Fed. Cir. 2000); and Kenner Parker Toys, Inc. v. Rose Art Industries, Inc., 963 F.2d 350, 22 USPQ2d 1453 (Fed. Cir. 1992). Fame for likelihood of

confusion purposes arises "as long as a significant portion of the relevant consuming public...recognizes the mark as a source indicator." Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 73 USPQ2d at 1694. In the present case, the relevant class of customers and potential customers of footwear and insoles for footwear would be the general consuming public looking for such goods.

As indicated above, a protective agreement prevents us from disclosing the specifics of opposer's sales and advertising figures regarding its DR. SCHOLL'S and AIR-PILLO marks. We can say, however, that opposer has enjoyed enormous success with its insoles promoted under these marks.

The DR. SCHOLL'S mark is famous. Applicant does not contend to the contrary.[6] Total sales of all DR. SCHOLL'S products are in the billions of dollars; sales of footwear and insoles for footwear under the mark comprise a significant portion of opposer's total sales. Over the past eight years, opposer spent hundreds of millions of dollars advertising DR. SCHOLL'S brand insoles. Opposer's promotional efforts have been rewarded with a high degree of brand awareness of this mark.

---

[6] See applicant's brief, p. 12 ("DR. SCHOLL'S...while a famous mark...").

7

Sales of products that display the DR. SCHOLL'S and AIR-PILLO marks together exceed tens of millions of units, constituting a significant portion of opposer's sales. In recent years, opposer has witnessed an increased level of brand awareness of its AIR-PILLO "sub-brand"; this level represents the highest level of consumer recognition of any of opposer's "sub-brands." Although the record falls short of establishing fame of the AIR-PILLO mark, the evidence shows that the mark has achieved some renown.

We now turn to compare the marks. The present case involves a twist on the comparison of marks factor in the likelihood of confusion analysis. This case presents the question of whether applicant's mark is confusingly similar to two of opposer's marks when those two marks are considered together. Therefore, we must first determine if opposer's marks are qualified for such a conjoint analysis given the evidence of record. If they fail to meet the prerequisites, each of the marks must be otherwise individually examined in a likelihood of confusion analysis against applicant's mark. Applicant's mark includes two elements, each of which is found in a mark of opposer, albeit two marks (DR. SCHOLL'S and AIR-PILLO) that are entirely different from one another. Thus, opposer's theory of the case is that applicant's mark DR. AIR is similar to opposer's marks considered in combination, because the mark

8

DR. AIR combines the "DR." portion of DR. SCHOLL'S and the "AIR" portion of AIR-PILLO.

In order that opposer's marks may be considered together, two elements must be satisfied before traditional likelihood of confusion analysis can proceed. First, it must be established that the marks have been and are being used together on a single product or in marketing. See H.D. Hudson Manufacturing Co. v. Food Machinery and Chemical Corp., 230 F.2d 445, 109 USPQ 48 (CCPA 1956); and Simoniz Company v. Hysan Products Company, 142 USPQ 377 (TTAB 1964). Further, it must be established that opposer's marks are used in such a fashion that it would be proper to combine them for purposes of comparison, that is, that they have been used and/or advertised conjointly in such a manner and to such an extent in connection with a single product that they have come to be associated together, in the mind of the purchasing public, as indications of origin for opposer's product. The Western Union Telegraph Company v. Graphnet Systems, Inc., 204 USPQ 971 (TTAB 1979) [FAX and GRAM marks v. FAX GRAM]; and Mallinckrodt, Inc. v. CIBA-GEIGY Corp., 195 USPQ 665 (TTAB 1977) [KOBAN, TOBAZ and PO-SAN marks v. TOLBAN]. Although the case law is settled in requiring evidence of conjoint use, the results vary depending on the evidentiary record in each case. See: H.D. Hudson Manufacturing Co. v. Food Machinery and Chemical Corp., 109

USPQ 48 [MISTY and ROTO-POWER v. ROTOMIST]; Parke, Davis & Co. v. The G.F. Harvey Co., 141 F.2d 132, 60 USPQ 572 (CCPA 1944) [DIGIFORTIS and KAPSEALS v. DIGISEALS]; Champion International Corp. v. Genova, 199 USPQ 301 (TTAB 1978) [NOVO and WELD marks v. NOVAWELD]; Aloe Creme Laboratories, Inc. v. Johnson Products Co., Inc., 183 USPQ 447 (TTAB 1974) [FASHION TAN and ALO-FACE v. FACIAL FASHIONS]; Chromium Mining & Smelting Corp., Ltd. v. Chemalloy Co., Inc., 179 USPQ 383 (TTAB 1973) [MAN-X and SIL-X v. MANSILEX]; Sperry Rand Corp. v. Remvac Systems Corp., 172 USPQ 415 (TTAB 1971) [UNIVAC and REMINGTON v. REMVAC]; Toro Manufacturing Corp. v. Kearney-National Inc., 168 USPQ 383 (TTAB 1970) [PROFESSIONAL and POWER HANDLE v. POW-R-PRO]; Nautalloy Products, Inc. v. The Danielson Manufacturing Co., 130 USPQ 364 (TTAB 1961) [NAUTALLOY, AQUABIRD and CHROMALLOY v. AQUALOY]; and R.J. Strasenburgh Co. v. The Wander Co., 127 USPQ 347 (TTAB 1960) [STRASCOGESIC and TUSSIONEX v. TUSSAGESIC].

As to the first element, Mr. Duchin testified that opposer routinely uses the DR. SCHOLL'S and AIR-PILLO marks together. DR. SCHOLL'S is opposer's house mark and is used in connection with every product sold by opposer; AIR-PILLO is, in opposer's words, a "sub-brand." In this connection, according to Mr. Duchin, "'AIR-PILLO' in any form is never used without 'DR. SCHOLL'S.'" (Duchin dep., p. 15). The

10

examples of opposer's product packaging shown below are representative of how opposer conjointly uses the marks DR. SCHOLL'S and AIR-PILLO.





In addition to the actual product packaging, the record includes examples of promotional uses of the marks DR. SCHOLL'S and AIR-PILLO together in the same advertisement. (see examples in Duchin dep. ex. no. 76).

11

In the present case, there is ample evidence to establish conjoint use and/or promotion of the marks DR. SCHOLL'S and AIR-PILLO in connection with a single product. In point of fact, as readily seen from the above uses, the marks appear in very close proximity to one another on packaging for insoles.

As to the second element, the Board, in Sperry Rand Corp. v. Remac Systems Corp., found that the continuous use together of the opposer's marks, the great expense in advertising the marks together, and the portions of the applicant's mark that resemble the opposer's marks are such that consumers would likely believe the mark sought to be registered identifies a product of opposer. Here, the record contains similar evidence to establish that the marks have come to be known together as indications of origin for opposer's goods. While the protective agreement prevents a full disclosure of the facts, our decision is largely based on a combination of facts mentioned in our analysis above for the fame of opposer's marks. Although there is nothing inherent in opposer's marks themselves to suggest an association, it is reasonable to find that the two marks are associated together in the minds of the purchasing public as indications of origin for opposer's insoles, given the widespread conjoint use over many years, the quantity of units sold, and the extensive advertising, all resulting in

12

the fame of the mark DR. SCHOLL'S and the renown of the mark AIR-PILLO.

In view of our finding that opposer's DR. SCHOLL'S and AIR-PILLO marks may be considered together and compared in combination to applicant's mark in our likelihood of confusion analysis, the issue of likelihood of confusion in this case is based on a comparison of the conjointly used marks DR. SCHOLL'S and AIR-PILLO with applicant's mark DR. AIR rather than a comparison of each of opposer's marks individually with applicant's mark. Applicant's mark comprises the first portion of each of opposer's marks. Although there are specific differences between the marks, they nevertheless are similar in sound and appearance. These similarities outweigh any differences in meaning. Further, the similarities result in marks that engender similar overall commercial impressions. Because the parties' marks are used on identical goods, and because DR. AIR obviously combines elements from opposer's famous mark DR. SCHOLL'S and opposer's well-known mark AIR-PILLO, consumers familiar with opposer's conjointly used DR. SCHOLL'S and AIR-PILLO marks, upon encountering applicant's DR. AIR mark, might well believe that applicant's insole is but another type of insole of opposer.

Applicant contends that there are "other marks" that combine use of the terms "DR." and "AIR." Applicant makes

13

specific reference to a few third-party marks that purportedly are the subjects of pending applications, as well as to the results of a search for trademarks that include either "DR." or "AIR." As opposer is quick to point out in its reply brief, however, applicant failed to introduce any evidence in support of its allegations. See, e.g., Electronic Data Systems Corp. v. EDSA Micro Corp., 23 USPQ2d 1460, 1462 n.5 (TTAB 1992); and TBMP §704.06(b) (2d ed. rev. 2004). Thus, the record is devoid of any properly introduced evidence relating to third-party uses or registrations of marks the same as or similar to opposer's marks. The lack of this type of evidence not only undercuts applicant's contentions but also adds support to opposer's claim that its marks are strong.

Rather than introducing testimony or other evidence to rebut opposer's case, applicant has taken the tack of criticizing opposer's evidentiary record.

Firstly, applicant points to the lack of survey evidence in support of opposer's claim of likelihood of confusion. Contrary to applicant's position, the Board does not require surveys in Board proceedings. See, e.g., Hilson Research Inc. v. Society for Human Resource Management, 27 USPQ2d 1423 (TTAB 1993); and Miles Laboratories Inc. v. Naturally Vitamin Supplements Inc., 1 USPQ2d 1445 (TTAB 1987). Accord: Charles Jacquin et Cie Inc. v. Destileria

Serralles Inc., 921 F.2d 467, 17 USPQ2d 1104 (3d Cir. 1990).

As the Board noted in <u>Hilson</u>, 27 USPQ2d at 1435-36:

> We appreciate the significant financial
> cost of surveys.  Moreover, we obviously
> recognize the limited jurisdictional
> nature of Board proceedings, wherein
> only rights to federal registrability,
> not use, are determined.  With these two
> thoughts foremost in our minds, we are
> not inclined to draw any negative
> inferences from a party's failure to
> offer survey evidence in a proceeding
> before the Board.

Secondly, applicant relies on the absence of evidence of any instances of actual confusion between the marks.  The absence of actual confusion is of no moment in this case, given that applicant's application is based on an intention to use the mark, and there is no evidence to suggest that applicant has commenced use.  Thus, to state the obvious, there has not been any opportunity for actual confusion in the marketplace.  In any event, the test here is likelihood of confusion, not actual confusion.  Weiss Associates Inc. v. HRL Associates Inc., 902 F.2d 1546, 14 USPQ2d 1840, 1842 (Fed. Cir. 1990).

We conclude that consumers familiar with opposer's footwear and insoles for footwear sold under the conjointly used marks DR. SCHOLL'S and AIR-PILLO would be likely to believe, upon encountering applicant's mark DR. AIR for identical goods, that the goods originate from or are associated with or are somehow sponsored by the same source.

Lastly, to the extent that there may be any doubt on our finding of likelihood of confusion, we resolve that doubt, as we must, in favor of opposer as the prior user. See Giant Food, Inc. v. Nation's Foodservice, Inc., 710 F.2d 1565, 218 USPQ 390, 395 (Fed. Cir. 1983).

**Decision:** The opposition is sustained on the ground of likelihood of confusion, and registration to applicant is refused.