The **NATIONAL DRYING MACHINERY COMPANY**

v.

**Jack ACKOFF, Individually and t/a Jack Ackoff Company.**

**Civ. A. No. 15589.**

United States District Court,
E. D. Pennsylvania.

Feb. 15, 1955.

**390**

· Daniel Mungall, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for plaintiff.

Louis Necho, Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

The plaintiff is engaged in manufacturing hot air drying machines for industrial use, principally in the textile field. Ackoff, the record defendant, sold electric hand dryers manufactured by National Dryer Manufacturing Corporation and distributed by National Dryer Sales Corporation. He has raised a number of defenses and filed a counterclaim based on the activities of his suppliers, and, so far as the trademark phase of this case is concerned, it will simplify the discussion if these two companies are treated as one and called "the defendant".

The plaintiff has been continuously engaged in business (under the same business name) and has been using its trademark upon its drying machines since at least 1929. The trademark was registered under the Act of 1905 and was, on March 25, 1952, re-registered under the Act of 1946, 15 U.S.C.A. § 1051 et seq. As registered, it consists of the word "National" in capital letters printed in an irregular line across an outline map of the United States. The registration, however, disclaims the map and the plaintiff relies entirely upon the word, "National". The defendant and its predecessors have manufactured and sold their hand dryer since 1948 or thereabouts and, since January 1950 the defendant has continuously used the words "National Dryer" as its trademark.

■■ I find it to be the fact that use by the defendant of its trademark has caused confusion and deceived prospective purchasers as to the source or origin of the defendant's machines and that it is likely to continue to do so in the future. This is the basis for liability under the Act of 1946. That Act dropped the limitation contained in the corresponding section of the Act of 1905 to the effect that the defendant must have used the registered mark on merchandise of substantially the same descriptive properties as those set forth in the registra-

tion. There is a difference of judicial opinion as to the limits of protection given to a trademark. Even under the narrowest view—the one which accords protection only in cases where there is not only a likelihood of confusion of source but also actual competition in the trademarked articles—a manufacturer will be protected if the product on which his trademark is being used by another is fairly within the normal field of expansion of his business, because it would be natural for purchasers acquainted with the former business and the mark to assume that the new product bearing the same mark was produced by the same manufacturer.

In the present case the defendant's argument is, in effect, that the evidence produced by the plaintiff of actual instances of confusion is so slight as to be negligible and that likelihood of confusion is negatived by the difference in the articles sold by the parties, the methods of merchandising and the class of customers addressed by each through advertising and solicitation. To this the defendant adds the admitted fact that the mark is a weak one, that the defendant has without fraudulent intent built up a considerable goodwill of its own and that the plaintiff's declaration of its intention to engage in the manufacture of hand dryers competing with the defendant's is, at least, suspect. There is no suggestion that there is any real danger of the plaintiff's product being brought into disrepute by the defendant's use of the name and, actually, the case comes down to the question whether the trademark owner will be protected in a field which he has not actually entered, and this in turn depends upon whether the field is one which might be considered in the line of normal expansion of his business.

Many of the facts upon which the defendant relies may be admitted. The plaintiff's business, as of today, is almost exclusively confined to large expensive drying machines which are commonly manufactured according to the individual needs of the purchaser and are intended for use in connection with industrial processes. The defendant manufactures a small, comparatively low-priced item which it markets through distributors for the retail trade, the ultimate customers being, generally, hotels, schools, public institutions and the like, and some industrial plants.

It is an impossible task to draw from the precedents a rule which will fit every case as it arises. I can only say that, from all the evidence, I have reached the conclusion that the manufacture of hot air hand dryers is a field so closely connected with what the plaintiff is doing at the present time that it can be considered an area of normal expansion of the plaintiff's business.

It must be conceded that "National" is almost as weak a mark as can be found. However, it is quite likely that a purchaser would have some difficulty in explaining which product he desired if he should try to identify it by its trade name. He would have to ask for prices on a "National" dryer as distinguished from a "National Dryer" dryer or vice versa. If a trademark, however weak, is to retain any validity, a manufacturer must be protected against a competitor's placing his customers in such a dilemma.

As to the special defenses raised by the defendant, the evidence falls short of sustaining any of them.

I find that the plaintiff's claim is not barred by laches, that the plaintiff is not estopped in this action by acquiescence in the defendant's use of the mark and that there has not been on the part of the plaintiff such acquiescence in the use of the mark by persons other than the defendant as would amount to abandonment or loss of the right to enforce the mark.

I do not find that the defendant has ever attempted the fraudulent use of the trademark or that it adopted it with any intention of misleading customers or palming off its machines as the plaintiff's, but neither can I find that its use has been innocent. It certainly used the

mark after it knew or should have known of the plaintiff's rights. Whether it did so in "good faith" depends upon what meaning one gives that somewhat elusive term. At any rate, it is no defense that it ill-advisedly continued to assert rights to which it may have honestly believed it was entitled but which it did not have.

The present suit was instituted against Jack Ackoff who was selling the alleged infringing goods in this district. In late July or August 1953, he entered into negotiations looking toward his becoming the exclusive agent for the sale of the hand dryers in this territory. However, before binding himself to a fixed quota, he wished to test the product in the market. As a result, he acted as an exclusive agent from August 1953 until February 1954 at which time he concluded that the line could not well be handled by him, and his exclusive agency terminated. He continued thereafter as a retail dealer for a few months and then broke off his relationship with his suppliers entirely. His answer and counterclaim raised certain issues of laches and prior use by his suppliers, etc., which it is doubtful that he could raise unless he were an exclusive agent. However, though I have found these defenses were without merit and that the counterclaim cannot be sustained, I should add that they are not subject to dismissal because of his inability to avail himself of them.

In spite of the fact that Mr. Ackoff no longer handles the infringing dryer, an injunction will issue against him in view of the distinct possibility that he would again do so. In view of the fact that the plaintiff does not at the present time manufacture any goods which would compete with the goods Mr. Ackoff sold, I cannot award the plaintiff more than nominal damages. However, I do award the plaintiff the costs of this suit, since at the time it was instituted and carried on Mr. Ackoff was engaged in the wrongful activity complained of.

Judgment may be entered for the plaintiff.

The statements of fact and law in the opinion are to be taken as modifying the answers to requests for findings of fact and conclusions of law and, in case of any conflict between the answers and the opinion, the statements in the opinion shall govern.