245 F.2d 192
 NATIONAL DRYING MACHINERY CO.
v.
Jack ACKOFF and National Dryer Mfg. Corp.
NATIONAL DRYER SALES CORPORATION (World Dryer Corporation, Successor in Interest Substituted)
v.
NATIONAL DRYING MACHINERY CO. National Dryer Mfg. Corp. and National Dryer Sales Corp. (World Dryer Corporation, Successor in Interest Substituted), Appellants.
 No. 12117.
 United States Court of Appeals Third Circuit.
 Argued March 19, 1957.
 Decided May 1, 1957.
 Rehearing Denied June 13, 1957.
 
 Nochem S. Winnet, Philadelphia, Pa. (Joseph Smukler, Daniel Lowenthal, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., on the brief), for appellants.
 Louis Necho, Philadelphia, Pa., for appellees.
 Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.
 HASTIE, Circuit Judge.
 
 
 1
 This appeal arises out of a civil contempt proceeding instituted after final decree in a trademark infringement case. The final decree had been approved by this court. 228 F.2d 349, affirming D.C., 129 F.Supp. 389. Several months later the successful plaintiff formally charged defendants with willful violation of certain prohibitory provisions of the decree which had enjoined defendants from selling drying machines "under a business name which includes the name `National'."
 
 
 2
 What the defendants have done since the decree, according to the present findings of the district court, "* * * is to continue to use the word `National', not only on letterheads in correspondence and in advertising matter, but also on name plates of the drying machines which they sell in connection with their present corporate name as follows: `World Dryer Corporation, formerly "National".' In all uses the word is prominently featured. On the name plates all the printing is in black letters except the words `Formerly National' which stand out in bright red."
 
 
 3
 The district court held that this action constituted civil contempt and ordered the defendants to "* * * pay Plaintiff a fine in the total sum of $5,000.00, a counsel fee in the sum of $1,000.00 and costs of the contempt proceeding with interest at 6% from November 20th, 1956, until the said sums are paid." However, the petition which initiated these contempt proceedings contained no allegation that the petitioner had suffered any damage as a result of the violation of the injunction. At the hearing there was neither proof nor tender of proof as to how much, if anything, plaintiff was entitled to recover.
 
 
 4
 The present appeal is bottomed upon this admitted failure to claim or prove damage and a legal argument that no punitive award, but only a sum to compensate for loss, may be granted to the complainant in a civil contempt proceeding.
 
 
 5
 Appellant's basic legal position is sound. Fifty years ago, when the courts were not yet agreed as to the scope of civil contempt, the Circuit Court of Appeals for the Second Circuit made a very clear statement of the position which, as we read the cases, has since won the day:
 
 
 6
 "* * * It is obvious that a fine exceeding the indemnity to which the complainant is entitled is purely punitive, and, notwithstanding the foregoing precedents to the contrary, we think that when it is imposed by way of indemnity to the aggrieved party it should not exceed his actual loss incurred by the violation of the injunction, including the expenses of the proceedings necessitated in presenting the offense for the judgment of the court. We are also of the opinion that when the fine is not limited to the taxable costs it should not exceed in amount the loss and expenses established by the evidence before the court. Unless it is based upon evidence showing the amount of the loss and expenses, the amount must necessarily be arrived at by conjecture, and in this sense it would be merely an arbitrary decision. Another reason why it should be based upon evidence is that otherwise the question of its reasonableness cannot be re-examined upon an appeal from a final decree in the cause, and the appellate court would have to treat the fine as a purely arbitrary one, or deny to the appellant his right of review." Christensen Engineering Co. v. Westinghouse Air Brake Co., 2 Cir., 1905, 135 F. 774, 782.
 
 
 7
 Attesting to present day acceptance of this rationale are assertions in two often cited opinions of the Supreme Court. In United States v. United Mine Workers, 1947, 330 U.S. 258, 303-304, 67 S.Ct. 677, 701, 91 L.Ed. 884. Chief Justice Vinson defined the scope of civil contempt as follows: "* * * Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. * * * Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss, * * *." Substantially the same thing had already been said by the Court in Gompers v. Bucks Stove & Range Co., 1911, 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797: "* * * The only possible remedial relief for such disobedience [violating a prohibitory injunction] would have been to impose a fine for the use of complainant, measured in some degree by the pecuniary injury caused by the act of disobedience."
 
 
 8
 It is difficult to square the $5,000.00 award in this case with such authoritative assertions of the limitations of legal power in civil contempt cases. Recognizing this problem, the district court ordered a reargument after its adjudication of contempt and fine had been announced in a memorandum opinion. Thereafter, the court restated its position in a second memorandum opinion, which reads in part as follows:
 
 
 9
 "Whether or not the Court has power to impose purely punitive damages, as the plaintiff contends, the decision of the Supreme Court in Leman v. Krentler Arnold Hinge Last Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389, leaves no possible doubt of the power of the Court in a civil contempt proceeding for infringement to order the defendants to pay to the plaintiff, as compensation for the invasion of its right, the amount of profits realized by the defendants from sales made in violation of the injunction, whether it be called a fine or something else. In this case the Court did not order an accounting of profits but imposed a fine intended as compensation. The amount of the fine may stand as the Court's estimate of a proper figure, representing less than the defendants' profits. If the defendants believe that it is excessive, they may, not later than ten days from the entry of this order, apply to the Court to order an accounting of profits. If no such application is made, the Court will enter an order, upon this reargument, confirming its original imposition of the fine, attorney's fee and costs."
 
 
 10
 We think this was error. Whether an award in civil contempt be measured in terms of a plaintiff's loss or a defendant's profit, such an award, by very definition, must be an attempt to compensate plaintiff for the amount he is out-of-pocket or for what defendant by his wrong may be said to have diverted from the plaintiff or gained at plaintiff's expense. Unless this limitation is recognized, a requirement that one party turn his profits over to his adversary itself becomes a punitive rather than a compensatory imposition.
 
 
 11
 Moreover, although we appreciate the purpose of the district court to dispose of this matter in a way which would be both expeditious and fair to the parties, we do not approve the entering of judgment in a round figure without proof and thereafter giving the defendant a chance to show that the award should be in some smaller amount. Though such an award is made against a wrongdoer adjudged guilty of civil contempt, we think the burden of showing what amount, if anything, the plaintiff is entitled to recover by way of compensation, cannot properly be shifted in this way from plaintiff to defendant.
 
 
 12
 In reaching this conclusion we have not overlooked the district court's reliance upon Leman v. Krentler-Arnold Hinge Last Co., 1932, 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389, as support for its disposition of the present proceeding. True, that case sanctions the use of profits yielded by contemptuous conduct in the measurement of the injury caused by a patent infringement. But in our view the Leman case does not relieve the complainant of showing that the contemptuous conduct did, in fact, have substantial injurious effect upon his economic interest. This conception is particularly important here because in the original disposition of the present petitioner's trademark infringement claim it appeared to the district court that the plaintiff had suffered no economic injury from the trademark infringement and that there was not "any real danger of the plaintiff's product being brought into disrepute by the defendant's use of the name * * *." 129 F.Supp. at page 391. The court added that "the case comes down to the question whether the trademark owner will be protected in a field which he has not actually entered * * *." On appeal this court said "the trial court is correct in its finding that there is no proof of any damages * *." 228 F.2d at page 350.
 
 
 13
 There is no suggestion in the present proceeding that this absence of economic injury has been changed by the contemptuous conduct of the defendants. The district court does say that the "equities" have been changed by this willful misconduct. But there can be no "equity" in a compensatory award except as it provides a fair equivalent for some loss. If, on the other hand, the reference to changed "equities" means that the defendant deserved punishment for a willful wrong, the procedure must be that of criminal contempt rather than the employment of civil contempt as a punitive device.
 
 
 14
 The judgment will be vacated and the cause remanded with directions to modify the award by eliminating the $5,000.00 item. All of the equities considered, neither party will be allowed costs in this court as against the other.
 
 On Petition for Rehearing
 
 15
 Before BIGGS, Chief Judge, MARIS, GOODRICH, McLAUGHLIN, KALODNER, STALEY and HASTIE, Circuit Judges.
 
 
 16
 PER CURIAM.
 
 
 17
 Appellee has urged reconsideration of our decision in this case arguing that it is in conflict with the decision of the Supreme Court in Leman v. Krentler-Arnold Hinge Last Co., 1932, 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389. This contention has been fully considered by the entire court. The petition for rehearing is hereby denied.
 
 
 18
 BIGGS, Chief Judge (dissenting).
 
 
 19
 I am of the view that the decision in Leman v. Krentler-Arnold Hinge Last Co., 1932, 284 U.S. 448, 52 S.Ct. 238, permits the plaintiff in a civil contempt proceedings to be compensated without showing actual loss where, as here, an injunction prohibiting a course of action has been violated. In the Leman decision Mr. Chief Justice Hughes stated: "There is no question here that the respondent had made profits through the infringing sales in violation of the injunction, and the amount of the profits was ascertained, but the appellate court held that the petitioners were limited to the damages caused by such sales and that no damages had been shown. We think that the court erred in imposing this limitation. The fact that a proceeding for civil contempt is for the purpose of compensating the injured party, and not, as in criminal contempt, to redress the public wrong, does not require so narrow a view of what should be embraced in an adequate remedial award.
 
 
 20
 "While the distinction is clear between damages, in the sense of actual pecuniary loss, and profits, the latter may none the less be included in the concept of compensatory relief. In a suit in equity against an infringer, profits are recoverable not by way of punishment but to insure full compensation to the party injured * * *", 284 U.S. at pages 455-456, 52 S.Ct. at page 241.
 
 
 21
 The Leman case overruled sub silentio Christensen Engineering Co. v. Westinghouse Air Brake Co., 2 Cir., 1905, 135 F. 774, 782, on which the majority relies. But the Leman decision was not overruled by United States v. United Mine Workers, 1947, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884. That the Supreme Court was not focusing its attention on the issue of proof of profits as distinguished from the issue of proof of damages in the United Mine Workers case is demonstrated by the fact that the opinion in that case cites with approval in note 80, 330 U.S. cited to the text at page 304, 67 S.Ct. at page 701, both the Leman case and Norstrom v. Wahl, 7 Cir., 1930, 41 F.2d 910, 914. Leman and Norstrom are directly contrary in their respective rulings in relation to the issue of proof of profits in contradistinction to the issue of proof of damages.
 
 
 22
 The majority also rely on the statement in the United Mine Workers opinion that where a fine is imposed as one kind of judicial sanction in a civil contempt proceedings, "Such fine must * * * be based upon evidence of complainant's actual loss * * *." 330 U.S. at page 304, 67 S.Ct. at page 701. But the quoted statement was not dispositive of the civil contempt issue raised in United Mine Workers case for the fine imposed had as its objective coercion of compliance with the order of the court and not compensation to an injured private party. Id. 330 U.S. at pages 304-305, 67 S.Ct. at pages 701-702.
 
 
 23
 By the decision in the case at bar the salutary rule that an infringer may be held accountable in an action for civil contempt for profits resulting from his violation of an injunction is brought to an end in this Circuit. At most the injured party can recover attorney's fees and costs in a useless action in which he can receive no compensation whatsoever for the injury he has suffered.
 
 
 24
 The issue involved is one of major importance. For these reasons I am of the view that rehearing should be had before the court en banc.
 
 
 25
 I am authorized to state that Judge MARIS joins in the views expressed in this opinion.