48 CCPA

**KING–KUP CANDIES, INC., Applicant-Appellant,**

v.

**KING CANDY COMPANY, Opposer-Appellee.**

**Patent Appeal No. 6633.**

United States Court of Customs and Patent Appeals.

April 14, 1961.

William Steell Jackson & Sons, Philadelphia, Pa. (Edward Lovett Jackson and Joseph Gray Jackson, Philadelphia, Pa., and John B. Armentrout, Washington, D. C., of counsel), for appellant.

Mason, Fenwick & Lawrence, Washington, D. C. (Edward G. Fenwick, Jr., and G. Cabell Busick, Washington, D. C., of counsel), for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

KIRKPATRICK, Judge.

This is an appeal by the applicant, King-Kup Candies, Inc., from the decision of the Trademark Trial and Appeal Board sustaining an opposition to the registration of the trademark, "King-Kup."

The opposer is King Candy Company, registrant of "King's" and "King's for American Queens," and its priority is not disputed.

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of* *Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28 U.S.C.

Both parties are manufacturers of candy and the goods in connection with which the marks are used are generally the same.

Neither party has made any point of the slight difference between the words "King" and "King's" nor of the fact that each of the competing marks consists in part of the corporate name of one of the parties, nor do we. The question involved is not an applicant's right to use its mark but its right to registration.

■ The issue here is whether the applicant's mark so resembles either of the opposer's marks as to be likely to cause confusion or mistake or to deceive purchasers. We shall, therefore, consider "King's" only.

■ The board found as a fact that the word "cup" indicates the form of a candy and that that term is so used generally in the trade and particularly in the applicant's advertising. It is applied to candies made and sold in the form of cups including milk chocolate peanut butter cups and milk chocolate coconut cups. It is clear, therefore, that the syllable "Kup," which is a full equivalent of the word "cup," is descriptive. The fact that kingcup is a dictionary recognized word for a common wild flower does not render its use in the candy business, in which "cup" is a descriptive term, fanciful or arbitrary.

In The Bon Ami Company v. McKesson & Robbins, Inc., 93 F.2d 915, 916, 25 CCPA 826, Judge Hatfield, in a special concurring opinion, said:

"If all that a newcomer in the field need do in order to avoid the charge of confusing similarity is to select a word descriptive of his goods and combine it with a word which is the dominant feature of a registered trade-mark so that the borrowed word becomes the dominant feature of his mark, the registered trade-mark * * * soon becomes of little value * * *."

Paraphrasing a part of the opinion of the court in National Drying & Machinery Company v. Ackoff, D.C.E.D. Pa., 129 F.Supp. 389, affirmed National Dryer Mfg. Co. v. National Drying Machinery Co., 3 Cir., 228 F.2d 349 (an action for infringement of the trademark "National" used on different types of drying machinery by the trademark "National Dryer" used on electric hand dryers), it must be conceded that "King's" is almost as weak a mark as can be found. However, it is quite likely that a purchaser would have some difficulty in explaining which product he desired if he should try to identify it by its trade name. He would have to ask for King's cup candies as distinguished from King-Kup cup candies, or vice versa. If a trademark, however weak, is to retain any value at all, its owner must be protected against a competitor's placing his customers in such a dilemma.

On reason for the rule as stated in Judge Hatfield's opinion appears rather strongly in the present case, namely, that there is more than a probability that, if the marks should be used concurrently, the casual purchaser of candy, familiar with King's candies, would, as the board said, "assume upon encountering 'King-Kup' candy that 'King-Kup' candy is a candy in cup form originating with opposer." In other words, the purchaser would be very likely to assume that King's was engaged in promoting a particular product of its own manufacture. This was the point mainly relied upon by the board in its decision and we agree.

Affirmed.

SMITH, MARTIN, Judges (dissenting).

The majority opinion and the decision of the board seems to us to give an unwarranted scope to opposer's registration. We would, therefore, reverse the board and dismiss the opposition. The mark on which the opposition is based is not *"King,"* as it was treated by the board and as it is treated in the majority opinion. The registration was granted on the possessive form of op-

poser's surname "King" written in a particular script.

The board, and the majority in affirming the board, treat the third party registrations as "irrelevant to the question of likelihood of confusion." Where, as here, the question of likelihood of confusion is based on an opposer's registration, prior third party registrations, while of limited evidentiary value, are nevertheless relevant to assist in determining the area in which such an opposer can assert exclusiveness of his mark.

The record contains third party registrations for candy prior to the granting of opposer's registration in which the word *"King"* appears in either its plural or possessive form as part of the following marks:

| Registration No. | Date | Goods |
|---|---|---|
| 567,608 | Dec. 9, 1952 | Chocolate confection candy pieces. |
| 385,756 | Mar. 18, 1941 | Glazed fruits and candies, and chocolate candies. |

The following prior third party registrations show the word *"King"* for candy.

| Registration No. | Date | Goods |
|---|---|---|
| 531,707 | Oct. 10, 1950 | Orange marmalade and candy |
| 500,597 | June 8, 1948 | Candies |
| 438,212 | Apr. 13, 1948 | Candy |
| 420,581 | Apr. 23, 1946 | Candy Bars, Peanut Butter and Candy Kisses |
| 415,116 | July 10, 1945 | Candy |
| 309,106 | Jan. 2, 1934 | Candies and Chocolates |

The precise issue here, whether applicant's mark so resembles opposer's registered mark that when applied to applicant's goods it is likely to cause confusion or mistake or to deceive purchasers, should be decided against this background of third party registrations and our view that opposer has but a limited area in which it can assert exclusiveness for its mark.

Another feature of the majority opinion with which we do not agree is the dissection of applicant's mark in arriving at the conclusion that confusion, mistake or deception of purchasers would be likely. This court has consistently held that marks must be considered in their entireties in determining whether such confusion, mistake or deception is likely to occur. Lekas & Drivas, Inc. v. Tenth Avenue Trading Corp., 223 F.2d 294, 42 CCPA 1010; Sleepmaster Products Co., Inc. v. American Auto-Felt Corp., 241 F.2d 738, 44 CCPA 784; Goodall-Sanford, Inc. v. Tropical Garment Mfg. Co., 275 F.2d 736, 47 CCPA 821.

Applicant's mark is "King-Kup." Unless we are to ignore our prior holdings, the proper basis for comparison of the marks is to compare opposer's mark "King's" with applicant's entire mark "King-Kup."

Such a comparison leads to the conclusion that the marks are sufficiently different so that confusion, mistake or deception would not be likely.

Another aspect of this case, which is overlooked in the majority opinion, is found in the different meanings which are inherent in the two marks. Opposer's mark "King's" being the possessive form of the name "King" immediately associates it with an entity capable of possessing. Applicant's mark, however, has no such possessive connotation, the word "King" is here used as an adjective. Its use in this sense denotes a quality, or something attributable to the noun cup, spelled "Kup" in applicant's mark. As such the adjective use defines the range of application of the noun or specifies it as being distinctive from something else. In this sense the word "King" has many uses as in "kingbolt," "king cobra," "king crab," etc. It also has acquired, due to extensive advertising uses by others, a suggestion of size as in "king" size cigarettes, etc.

When, as here, we are dealing with common words we must be ever alert to their precise meanings and characteristics. As Mr. Justice Holmes observed in a different context in Towne v. Eisner, 1918, 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372:

> "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used."

Here opposer's mark "King's," has been endowed by the majority opinion with the properties of the common chameleon and as such has been permitted to change the color of its skin and according to the mood of opposer to take on a color and content of meaning quite different from that on which registrability was predicated.

The word "King" *per se* standing alone in the candy field is, as shown by the prior third party registrations, a very weak mark. At this point we are in accord with the concession in the majority opinion that " 'King's' is almost as weak a mark as can be found." However, we would not sustain the present opposition, where the only source of likely confusion, mistake or deception arises from the use by applicant of the word "King" as a part of its entire mark "King-Kup." "King" when so used does not suggest or indicate the opposer could be the source of the candy on which applicant uses its mark. Goodall-Sanford, Inc. v. Tropical Garment Mfg. Co., 275 F.2d 736, 47 CCPA 821.