THIS OPINION IS
A PRECEDENT OF
THE TTAB

Mailed:  September 4, 2007

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Ginc UK Limited

_____

Serial No. 78618843

_____

R. Peter Spies of Dineff Trademark Law Limited for Ginc UK Limited.

Christopher M. Ott, Trademark Examining Attorney, Law Office 116 (Michael W. Baird, Managing Attorney).

_____

Before Seeherman, Holtzman and Cataldo, Administrative Trademark Judges.

Opinion by Holtzman, Administrative Trademark Judge:

Applicant, Ginc UK Limited, has filed an application to register the mark ZOGGS TOGGS (in standard character form) for "articles of clothing namely swimsuits, swim caps, warm-up suits, t-shirts, jackets and wet suits" in Class 25.[1]

---

[1] Serial No. 78618843, filed April 28, 2005, originally based on a foreign registration under both Section 44(e) and Section 1(b) of the Trademark Act and subsequently amended to rely solely on Section 44(e). Applicant has claimed ownership of Registration No. 1949864 for the mark ZOGGS for "optical lenses; eyewear; namely, spectacles, sunglasses, frames, cases, chains, ribbons, nose pads; goggles, safety goggles and motorcycle goggles" in Class 9; and "skiing goggles, swimming goggles, diving goggles and masks" in Class 28.

The trademark examining attorney has refused registration under Section 2(d) of the Trademark Act on the ground that applicant's mark, when applied to applicant's goods, so resembles the registered mark shown below for "outer wear, namely T-shirts, sweat shirts, coats, jackets, cover-ups, caps, hats, swim suits and wet suits, and inner wear, namely a body-conforming unitard" in Class 25, as to be likely to cause confusion.[2]



In addition, the trademark examining attorney has refused registration in view of applicant's failure to comply with the requirement for a disclaimer of TOGGS under Section 6(a) of the Trademark Act.

When the refusals were made final, applicant appealed. Both applicant and the examining attorney have filed briefs.

As a preliminary matter, applicant submitted, for the first time with its appeal brief, evidence consisting of pages of Google search summaries (exhibit 1); additional portions of registrant's website (exhibit 2); a definition obtained from an

---

[2] Registration No. 2786903; issued November 25, 2003 to Sexwax, Incorporated.

Serial No. 78618843

online source (exhibit 3, page 1);[3] and printouts of third-party

registrations (exhibit 6).  The examining attorney has objected

to this evidence as being untimely under Trademark Rule 2.142(d),

and the objection is well taken.  Accordingly, this evidence will

not be considered.[4]

### Disclaimer of TOGGS

As provided in Section 6(a) of the Trademark Act, the

Director may require the applicant to disclaim an unregistrable

component of a mark otherwise registrable.  A component of a mark

is unregistrable if, when used in connection with applicant's

goods, it is merely descriptive of the goods under Section

2(e)(1) of the Trademark Act.

The examining attorney argues that TOGGS, as a mere

misspelling of "togs," is at least merely descriptive of

applicant's clothing.  In support of this contention the

examining attorney has submitted definitions of "togs" from

various dictionaries including the following (italics in

original):

---

[3] *Merriam-Webster OnLine Dictionary* (from merriam-webster.com).  The
Board may take judicial notice of dictionary definitions, including
online dictionaries, which exist in printed format.  See In re
CyberFinancial.Net Inc., 65 USPQ2d 1789, 1791 n.3 (TTAB 2002).  See
also University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co.,
Inc., 213 USPQ 594 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505
(Fed. Cir. 1983).  There is no indication that this version of the
dictionary exists in printed format.  In any event, as will be
discussed later in this opinion, this evidence is not persuasive.

[4] We add, however, that even if we were to consider this evidence it
would not be persuasive of a different result in this case.

3

1. Clothes: *gardening togs.*
*Dictionary.com* (dictionary.reference.com)

n: informal terms for clothing [syn: threads, duds].
*WordNet 2.0* (2003 Princeton University)
dictionary.reference.com

CLOTHING: *especially* : a set of clothes and
accessories for a specified use <riding *togs*>.
*Merriam-Webster OnLine* (m-w.com)

In addition, we take judicial notice of the definition in

Microsoft Encarta College Dictionary, at p. 1511 (2001) which

identifies "togs" as the plural of "tog" and defines the term as

"clothes of any kind (informal)."

The examining attorney has also submitted copies of three

use-based, third-party registrations for marks covering various

items of clothing, each of which includes a disclaimer of "TOGS."

These registrations are:  Registration No. 0112329 for the mark

JACK TAR TOGS (stylized) for "children's suits, coats, waists;

gymnasium suits, bloomers, and boys' suits" (deleted goods

omitted); Registration No. 3083433 for the mark BECK NORTHEASTER

FLYING TOGS GENUINE HORSEHIDE MADE IN U.S.A. LEGENDARY PRODUCTS

INC. (and design), (also disclaiming "Genuine Horsehide," "Made

in U.S.A." and "Products, Inc.") for "leather outerwear, namely

jackets, pants, vests and chaps for men and women"; and

Registration No. 2986262 for the mark TERRA TOGS (stylized) for

"shirts, shorts, hats, skirts, socks, shoes, dresses."

Applicant's goods are clothes. It is clear from the dictionary references that "togs" is a generic, interchangeable word for "clothes" or "clothing." The third-party registrations also demonstrate the descriptive/generic significance of "togs" and provide further evidence that purchasers would attribute the ordinary dictionary meaning of "togs" to applicant's clothing.[5] See Institut National Des Appellations D'Origine v. Vintners International Co., 958 F.2d 1574, 22 USPQ2d 1190, 1196 (Fed. Cir. 1992) ("Such third party registrations show the sense in which the word is used in ordinary parlance and may show that a particular term has descriptive significance as applied to certain goods or services.").

The generic meaning of "togs" is not overcome by the misspelling of the term as TOGGS in applicant's mark. A slight misspelling is not sufficient to change a descriptive or generic word into a suggestive word. See, e.g., Nupla Corp. v. IXL Manufacturing Co., 114 F.3d 191, 42 USPQ2d 1711, 1716 (Fed. Cir. 1997) (CUSH-N-GRIP "which is merely a misspelling of CUSHION-GRIP, is also generic as a matter of law"); In re Quik Print Copy Shop, Inc., 616 F.2d 523, 205 USPQ 505, 507 n.9 (CCPA 1980) ("There is no legal difference here between 'quik' and

_____

[5] In addition, at least one case has recognized the generic meaning of "togs" for clothing. See Jolly Kids Togs v. Siceloff Manufacturing Company, Inc., 118 USPQ 459, 459 (Comm'r Pat. 1958) finding that "KIDS TOGS" in the mark JOLLY KIDS TOGS "is the name of the goods." (JOLLY JEANS for ladies' denim jeans confusingly similar to JOLLY KIDS TOGS for children's denim jeans).

5

'quick.'"); King-Kup Candies, Inc. v. King Candy Co., 288 F.2d 944, 129 USPQ 272, 273 (CCPA 1961) ("the syllable 'Kup,' which is the full equivalent of the word 'cup,' is descriptive"); and Micro Motion Inc. v. Danfoss A/S, 49 USPQ2d 1628, 1630 (TTAB 1998) ("'mass flow' [is] generic" as applied to mass flowmeters and "the term MASSFLO likewise is generic" as applied to those goods).

The term TOGGS is the phonetic and legal equivalent of "togs," and as such it is an equally generic term for applicant's goods.

Applicant does not really dispute the meaning of "togs," per se, but instead contends that ZOGGS TOGGS is unitary, and thus requires no disclaimer. Applicant relies on TMEP §1213.05 and Dena Corp. v. Belvedere Int'l, Inc., 950 F.2d 1555, 21 USPQ2d 1047 (Fed. Cir. 1991) arguing that "the two elements of its mark are so merged together that they cannot be divided to be regarded as separable elements"; that the mark "creates a unique sound pattern"; and further that the mark

> consists of two almost identical terms that vary solely by the first letter of each word. The two monosyllabic words look the same, sound the same and rhyme. Consequently, Appellant's mark forms a unitary whole through its distinct rhyming pattern, which creates a distinctive impression. Brief, p. 14.

As explained by the Federal Circuit in Dena Corp., supra at 1052, a mark that is unitary

has certain observable characteristics. Specifically, its elements are inseparable.  In a unitary mark, these observable characteristics must combine to show that the mark has a distinct meaning of its own independent of the meaning of its constituent elements. In other words, a unitary mark must create a single and distinct commercial impression.  This test for unitariness requires the Board to determine "how the average purchaser would encounter the mark under normal marketing of such goods and also...what the reaction of the average purchaser would be to this display of the mark."  Magic Muffler, 184 USPQ at 126.

We disagree with applicant that ZOGGS TOGGS is a unitary mark.  The two terms are visually similar, but they are not physically joined or otherwise so visually integrated that TOGGS would not be viewed as a separable element.  The two words rhyme, but the rhyming quality imparts no new or different meaning to TOGGS apart from its meaning as a generic term for clothing.  In other words, there is nothing in the composite mark ZOGGS TOGGS either visually or conceptually which causes the word TOGGS to lose its ordinary meaning as a generic word.

Applicant has pointed to no cases, nor have we found any, where the mere fact that the terms look similar and/or sound similar is sufficient to overcome the descriptive meaning of a mark or portion of a mark.  In fact, the Board has found in a number of cases that alliterative or repeated wording is not sufficient to negate the descriptive meaning of a term in the mark as a whole.  See, for example, In re Litehouse Inc., 82

USPQ2d 1471, 1474 (TTAB 2007) (CAESAR!CAESAR! for salad dressing not unitary; "neither the mere repetition of the word CAESAR in applicant's mark, nor the presence of the exclamation points in the mark, nor both of these features combined, suffices to negate the mere descriptiveness of the mark as a whole as applied to salad dressings."); In re Disc Jockeys, Inc., 23 USPQ2d 1715, 1716 (TTAB 1992) (finding DJDJ to be merely descriptive of disc jockey services, the Board explained, "the combinations of these words would not, simply because of their repetition, be rendered something more than descriptive," and specifically noted that "there is nothing in the composite which changes the meaning of the letters in any manner which would give them a different meaning."); and In re Lean Line, Inc., 229 USPQ 781, 782 (TTAB 1986) (LEAN LINE for low calorie foods not unitary; "there is nothing in the record to suggest that the mere fact that both words which form the mark begin with the letter 'L' would cause purchasers to miss the merely descriptive significance of the term 'LEAN' or consider the entire mark to be a unitary expression."). See also J & J Snack Foods, Corp. v. Earthgrains Co. 220 F.Supp.2d 358, 65 USPQ2d 1897, 1912 (D.N.J. 2002) (rejecting the argument that BREAK & BAKE for a type of cookie dough is suggestive because it is novel, creative, playful and unconventional because "it does not change the fact that 'BREAK &

BAKE' is a succinct and exact definition of the use of this particular type of cookie dough.").

We also note that in In re Kraft, 218 USPQ 571, 573 (TTAB 1983), the Board's finding that LIGHT 'N LIVELY for reduced calorie mayonaise was unitary was based not only on the "alliterative lilting cadence" of the wording but also on the fact that the mark as a whole "has a suggestive significance which is distinctly different from the merely descriptive significance of the term 'LIGHT' per se" and that "the merely descriptive significance of the term 'LIGHT' is lost in the mark as a whole."

Indeed, as in *Kraft*, other cases have found that a mark is unitary where the combination of terms results in a separate and distinct meaning or commercial impression apart from or in addition to its descriptive meaning. See, for example, In re Colonial Stores, Inc., 394 F.2d 549, 157 USPQ 382 (CCPA 1968) (finding SUGAR & SPICE not merely descriptive of bakery products, the Court noted that the mark was not only descriptive but also evoked an association with the nursery rhyme, "sugar and spice and everything nice"); No Nonsense Fashions, Inc. v. Consolidated Foods Corporation, 226 USPQ 502, 507 (TTAB 1985) (SHEER ELEGANCE not descriptive of pantyhose; while the individual components are descriptive "the composite term has an unmistakable 'double entendre'"); In re Priefert Mfg. Co., Inc., 222 USPQ 731, 733

9

(TTAB 1984) (HAY DOLLY not merely descriptive of self-loading trailers for hauling bales; "phonetically the term is equivalent to the expression 'Hey Dolly,' giving the mark a commercial impression which transcends that which emerges as a result of legal analysis."); and In re Delaware Punch Company, 186 USPQ 63, 64 (TTAB 1975) (THE SOFT PUNCH for noncarbonated, non-alcoholic beverage not merely descriptive; the mark "possesses a degree of ingenuity in its phraseology which is evident in the double entendre that it projects.").

Despite the rhyming quality of the words ZOGGS TOGGS and their visual similarity, the combination does not infuse TOGGS with any separate and distinct meaning apart from its generic meaning.  We find that even when the two terms are combined, TOGGS retains its plain meaning as a generic term.  Accordingly, the term TOGGS must be disclaimed.

### Likelihood of Confusion

Our determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue.  In re E.I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973).  In any likelihood of confusion analysis, however, two key considerations are the similarities or dissimilarities between the marks and the similarities or dissimilarities between the

goods.  See Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098, 192 USPQ 24 (CCPA 1976).

Applicant's goods include t-shirts, jackets, swimsuits and wet suits.  These goods are identical to the t-shirts, jackets, swimsuits and wet suits listed in the cited registration.  Pointing to printouts from registrant's website (sexwax.com), applicant argues that registrant targets a very specialized market selling surfing-related products and predominantly wax products.  Response dated June 8, 2006.  However, we must base our analysis on the goods as identified in the application and registration.  Registrant's goods are identified as clothing, not wax products, and the clothing is identified broadly without any restrictions as to a particular use or a particular market.  Because there are no restrictions in the identification of goods, we must assume that these identical goods are used for all the usual purposes, that they are sold in all the normal channels of trade to all the usual purchasers for such goods, and that the uses, channels of trade and purchasers for both applicant's and registrant's goods would be the same.  See J & J Snack Foods Corp. v. McDonald's Corp., 932 F.2d 1460, 18 USPQ2d 1889 (Fed. Cir. 1991); and Octocom Systems Inc. v. Houston Computers Services Inc., 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) (registrability is based on the identification of goods

"regardless of what the record may reveal as to the particular nature of an applicant's goods...").

Furthermore, the goods, as identified, include ordinary consumer items such as t-shirts, jackets and swimsuits, and we must assume that the class of consumers for such goods is the public at large, rather than a discriminating or sophisticated market segment. Consumers of at least these ordinary items of clothing are not likely to exercise a high degree of care in their purchasing decisions, thus increasing the risk of confusion. See Specialty Brands, Inc. v. Coffee Bean Distributors, Inc., 748 F.2d 669, 223 USPQ 1281 (Fed. Cir. 1984).

It is clear that if these identical goods are offered under similar marks there would be a likelihood of confusion. Thus, we turn to the marks, keeping in mind that when marks would appear on identical goods, the degree of similarity between the marks necessary to support a finding of likely confusion declines. Century 21 Real Estate v. Century Life, 970 F.2d 874, 23 USPQ2d 1698 (Fed. Cir. 1992).

In determining the similarity or dissimilarity of marks, we must consider the marks in their entireties in terms of sound, appearance, meaning and commercial impression. See Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005).

Applicant argues that the examining attorney has improperly dissected the marks. In applicant's view, when the marks are properly evaluated in their entireties the differences are sufficient to distinguish the marks as a whole. As to appearance, applicant notes that the marks are spelled differently and that, unlike applicant's mark, the cited mark is a composite "which consists of the highly stylized word ZOG" and a design with the word embedded in the star. Brief, p. 4. Applicant argues, based on In re Electrolyte Laboratories, Inc., 913 F.2d 930, 16 USPQ2d 1239 (Fed. Cir. 1990), that consumers confronted with registrant's mark "will likely perceive of the mark as a STAR DESIGN mark rather than the word mark ZOG." Brief, p. 10. Applicant contends that the marks are dissimilar in sound because its "two monosyllabic words...sound the same and rhyme." In terms of meaning, applicant argues that ZOG will be perceived as the name of an historical figure, an Albanian King by the name of "Zog I"[6] whereas ZOGGS TOGGS, according to applicant, has no apparent dictionary meaning.

While marks must be compared in their entireties, it is well settled that one feature of a mark may have more significance than another, and there is nothing improper in giving greater

---

[6] Applicant submitted an entry from *Merriam-Webster OnLine Dictionary* identifying "Zog I" as follows: "biographical name 1895-1961 prename Ahmed Bey Zogu king of the Albanians (1928-1939); pursued policy of close collaboration with Italy; driven from Albania by Italian invasion (1939)."

weight to the more significant feature.  See In re National Data Corp., 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985).  See also Cunningham v. Laser Golf Corp., 222 F.3d 943, 55 USPQ2d 1842, 1845 (Fed. Cir. 2000) ("the Board was justified in examining each component of the mark ... and the effect of that component on the issue of likelihood of confusion as between the respective marks in their entireties").

There are differences between applicant's mark ZOGGS TOGGS and registrant's ZOG and design mark.  However, when the marks are compared in their entireties, giving appropriate weight to the components therein, we find that they are similar in sound, appearance, meaning and commercial impression, and that the similarities in the marks far outweigh their differences.

The terms ZOG and ZOGGS are the most significant components of the respective marks.  It is these portions of the marks that convey the strongest impression.  The word TOGGS in applicant's mark, as we have indicated, is generic for clothing, and while we have not ignored this term in the analysis, the fact is that the purchasing public is more likely to rely on the non-generic portion of the mark, ZOGGS, as an indication of source.  See In re National Data Corp., supra at 751 ("That a particular feature is descriptive or generic with respect to the involved goods or services is one commonly accepted rationale for giving less weight to a portion of a mark").

14

Further, it is the word ZOG itself, rather than the particular display of the word, that is more likely to have a greater impact on purchasers and be remembered by them. See CBS, Inc. v. Morrow, 708 F.2d 1579, 218 USPQ 198, 200 (Fed. Cir. 1983) ("in a composite mark comprising a design and words, the verbal portion of the mark is the one most likely to indicate the origin of the goods to which it is affixed"). The word portion of a composite word and design mark is generally accorded greater weight because it is used to call for and refer to the goods. See, e.g., In re Dixie Restaurants Inc., 105 F.3d 1405, 1407, 41 USPQ2d 1531 (Fed. Cir. 1997). See also In re Appetito Provisions Co., 3 USPQ2d 1553 (TTAB 1987). This is particularly true in this case where the design element in registrant's mark consists of ordinary geometric shapes that serve essentially as background for the display of the word and it does little to affect or change the commercial impression created by ZOG alone.

The term ZOGGS, the dominant portion of applicant's mark, is only a slightly different spelling from ZOG, the dominant portion of registrant's mark, with virtually identical pronunciation. Thus, the marks as a whole are similar in sound and appearance. See Nation's Foodservice, Inc., 710 F.2d 1565, 218 USPQ 390, 395 (Fed. Cir. 1983) ("Another factor weighing heavily in our decision is that the dominant portion of both parties' marks sounds the same when spoken" and "any differences in the design

15

of the marks would not serve to avoid confusion.").  Further,

with regard to appearance, the mark ZOGGS TOGGS, presented in

standard character form, could reasonably be displayed

emphasizing the ZOGGS portion of the mark in a curved stylized

format similar to ZOG in registrant's mark, thereby increasing

the visual similarity of the two marks.[7]  See Phillips Petroleum

Co. v. C. J. Webb Inc., 442 F.2d 1376, 170 USPQ 35 (CCPA 1971);

and INB National Bank v. Metrohost Inc., 22 USPQ2d 1585 (TTAB

1992).

Contrary to applicant's contention, as we discussed earlier,

ZOGGS TOGGS is not a unitary mark.  But even if it were, the term

ZOGGS is still a separately recognizable term, and it would still

be considered a dominant feature of the mark even though part of

the unitary whole.  Nor do we agree with applicant that the

Electrolyte Laboratories case is applicable here and that

registrant's mark would be viewed essentially as a "star design."

That case involved composite marks featuring letters which, as

the Court noted, can be close to design marks and therefore may

or may not be vocalized.  Here, we are dealing with a composite

mark that features a clearly identifiable and pronounceable word.

---

[7] Applicant correctly notes, however, that contrary to the examining attorney's apparent contention in the Office action of December 8, 2005, rights in the term ZOGGS TOGGS would not extend to include protection for those words combined with a design element.  See Fossil Inc. v. Fossil Group, 49 USPQ2d 1451 (TTAB 1998) and In re Pollio Dairy Products Corp., Inc., 8 USPQ2d 2012 (TTAB 1988).

16

The marks are also identical in meaning, and the overall commercial impression of the marks is similar, if not the same. We acknowledge applicant's point that "Zog I" is the name of a former Albanian King. However, it is unclear whether most consumers would be familiar with or aware of this historical figure. To those who are not, the term ZOG is likely to be perceived as simply an invented term.[8] Whichever meaning is applied, however, that meaning would be the same in both applicant's and registrant's marks. Because ZOG is such an unusual word, to those consumers who are familiar with King Zog, the very similar term ZOGGS is likely to at least bring to mind King Zog's name. There are no differences in these marks which would be sufficient to cause purchasers to assume that ZOG when used on clothing has one meaning, while the virtually identical term ZOGGS when used on the same goods has another. Instead, when these marks are used on the identical items of clothing, purchasers are likely to perceive ZOGGS TOGGS as simply a different version of registrant's ZOG and design mark or are likely to assume that the marks identify different clothing lines from the same source.

---

[8] Applicant's argument that "ZOG" would be perceived by consumers as an abbreviation or an acronym is unsupported by timely evidence and is unpersuasive in any event. Also unpersuasive, as noted earlier, is the untimely dictionary definition of "tog" submitted by applicant. This entry provides a definition of the verb form of "tog" as meaning "to dress especially in fine clothing - usually used with *up* or *out*." (Italics added.) Consumers are no more likely to perceive "togs" as a verb than they would "clothes" as a verb in the context of this mark.

Furthermore, the completely unique and arbitrary, if not coined, nature of ZOG in relation to clothing not only entitles the registered mark to a broad scope of protection, but significantly increases the likelihood that the marks, when used in connection with the identical goods, would cause confusion. See Jockey International Inc. v. Butler, 3 USPQ2d 1607 (TTAB 1987). See also Palm Bay Imports, supra at 1692 ("VEUVE is an arbitrary term as applied to champagne and sparkling wine, and thus conceptually strong as a trademark"); and Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 230 USPQ 831, 834 (2d Cir. 1986) (a fanciful mark "is entitled to the most protection the Lanham Act can provide").

In further support of its position that the marks are not confusingly similar, applicant points to its ownership of Registration No. 1949864 for the mark ZOGGS for "optical lenses; eyewear; namely, spectacles, sunglasses, frames, cases, chains, ribbons, nose pads; goggles, safety goggles and motorcycle goggles" in Class 9; and "skiing goggles, swimming goggles, diving goggles and masks" in Class 28. Applicant argues that these goods, which are accessories for swim wear and outerwear, must be considered similar to the goods in the cited registration which include "swim suits and wet suits" and that therefore the goods in the present application "may be considered within

18

Appellant's natural zone of expansion."[9]  Reply Brief, p. 4.

Applicant also states that it previously owned a now cancelled

registration (Reg. No. 2104680) for the mark ZOGGS TOGGS for

"articles of clothing, namely, swimsuits, swim caps, warm-up

suits, T-shirts, jackets and wet suits."[10]  Noting that the Office

previously allowed the cited registration to issue over both

ZOGGS for goods in Classes 9 and 28 and the now cancelled

registration for ZOGGS TOGGS for identical goods, applicant

argues that the Office has already determined that there is no

likelihood of confusion between its marks and the mark in the

cited registration.  In connection with these points, applicant

also contends that there has been no actual confusion between

ZOGGS and the cited mark, and that the marks have coexisted on

the register and in commerce "for several years" without any

instances of confusion.  (Brief, p. 12.)

Applicant's arguments are unpersuasive.  To begin with, the

goods in the present application and the prior active

registration for ZOGGS are not the same.  In particular, the

---

[9] As the Board observed in In re 1st USA Realty Professionals, Inc. ____USPQ2d_____ , Serial No. 78553715 (TTAB August 7, 2007), "the concept of expansion of trade is generally addressed in the context of the issue of priority in an inter partes proceeding."  Priority of use is not an issue in an ex parte proceeding.  See In re Calgon Corporation, 435 F.2d 596, 168 USPQ 278, 280 (CCPA 1971).  As explained in 1st USA, the doctrine, in an ex parte context, essentially requires application of the traditional, related goods and services analysis, and we construe applicant's argument as such.

[10] This registration issued on October 14, 1997 and was cancelled under Section 8 of the Trademark Act on July 17, 2004.

goods as identified in the application are no longer just arguably related to those in the cited registration, they are now identical to registrant's goods. The fact that applicant may have obtained a registration for different goods has no bearing on whether the marks and goods at issue in this case are likely to cause confusion. Nor does applicant's cancelled registration justify registration of its current application. A cancelled registration is not entitled to any of the statutory presumptions of Section 7(b) of the Trademark Act. See, e.g., In re Hunter Publishing Company, 204 USPQ 957, 963 (TTAB 1979) (cancellation "destroys the Section [7(b)] presumptions and makes the question of registrability 'a new ball game' which must be predicated on current thought."). See also Action Temporary Services Inc. v. Labor Force Inc., 870 F.2d 1563, 10 USPQ2d 1307, 1309 (Fed. Cir. 1989) ("a cancelled registration does not provide constructive notice of anything.").

Furthermore, our determination of likelihood of confusion must be based on the facts and record before us. We are not bound by a previous examining attorney's determination that the cited mark was entitled to register over applicant's two registrations, and to the extent the cited registration was issued in error, we will not repeat the error by permitting a confusingly similar mark to register again. See In re Nett Designs, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001)

("The Board must decide each case on its own merits"); In re Cooper, 254 F.2d 611, 117 USPQ 396, 401 (CCPA 1958) ("...the decision of this case in accordance with sound law is not governed by possibly erroneous past decisions by the Patent Office"); and In re Perez, 21 USPQ2d 1075 (TTAB 1991) (Section 2(d) refusal based on prior conflicting registration affirmed, despite the fact that the conflicting registration had not been cited as bar to applicant's previous registration (now expired) of the same mark for the same goods).

As for the *du Pont* factor of lack of evidence of actual confusion, the fact that these registrations coexisted on the register does not prove that the marks coexisted in the marketplace without confusion. Further, applicant's unsupported assertion that there has been no actual confusion during the marks' asserted coexistence is entitled to little probative weight.[11] Without evidence of the nature and geographic extent of both applicant's and registrant's use of their respective marks, we cannot determine whether a meaningful opportunity for actual confusion has ever existed. See Gillette Canada Inc. v. Ranir Corp., 23 USPQ2d 1768 (TTAB 1992). Cf. In re General Motors Corp., 23 USPQ2d 1465 (TTAB 1992). See also Trek Bicycle Corp.

---

[11] Furthermore, as the examining attorney points out, applicant's now cancelled Registration No. 2104680 was based on a foreign registration and was cancelled under Section 8 of the Trademark Act; there is no evidence that the mark was ever used in the United States.

v. Fier, 56 USPQ2d 1527, 1530 (TTAB 2000) ("the assertion by one party that it is not aware of any incidents of actual confusion carries little weight").

In view of the foregoing, and because the marks are very similar and are for use in connection with identical goods, we find that there is a likelihood of confusion.

**Decision:** The requirement for a disclaimer under Section 6 and the refusal to register under Section 2(d) of the Trademark Act are affirmed.[12]

---

[12] If applicant wishes to submit the required disclaimer of TOGGS, it must do so within thirty days of the mailing date of this decision. A proper disclaimer would read: "No claim is made to the exclusive right to use TOGGS apart from the mark as shown."